# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

***People v. $280,020 in United States Currency*, 2013 IL App (1st) 111820**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. $280,020 in UNITED STATES CURRENCY, Defendant-Appellee (Shayne Kolody and Stephen M. Komie, Claimants-Appellees). |
| District & No. | First District, Third Division<br>Docket No. 1-11-1820 |
| Rule 23 Order filed<br>Rule 23 Order withdrawn<br>Opinion filed | April 24, 2013<br><br>June 7, 2013<br>June 12, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action contesting the seizure of a large amount of cash found in a warrantless, nonconsensual search of claimant's luggage at a train station, the judgment ordering the State to return the cash was affirmed, since claimant's possession of the cash gave him standing to contest the forfeiture, even though he did not claim the cash was his, the exclusionary rule applies to forfeiture proceedings and allowed claimant to challenge the evidence of the seized currency on the ground that the search and seizure violated his rights, probable cause for the search was not established, despite the State's contention that claimant met the profile of a drug courier, claimant's motion to suppress was properly granted, and without the evidence of the cash, there were no grounds for forfeiture. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 01-M1-605300; the Hon. Mark J. Ballard, Judge, presiding. |

| Judgment | Affirmed. |
|---|---|
| Counsel on Appeal | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Douglas P. Harvath, and Tobara S. Richardson, Assistant State's Attorneys, of counsel), for the People. |
| | Komie & Associates, of Chicago (Stephen M. Komie and Brian E. King, of counsel), for appellee. |
| Panel | PRESIDING JUSTICE NEVILLE delivered the judgment of the court, with opinion. Justices Sterba and Pierce concurred in the judgment and opinion. |

## OPINION

¶ 1    Police officers found cellophane wrapped bundles of cash in Shayne Kolody's luggage at Union Station. The officers seized the luggage and the State filed a complaint under the Drug Asset Forfeiture Procedure Act (Act) (725 ILCS 150/1 *et seq.* (West 2000)), alleging that either someone intended to use the cash to purchase narcotics or someone received the cash in exchange for narcotics. Shayne filed a claim for the cash. He moved to suppress the evidence discovered in the search of his luggage. During a trial at which Shayne and police officers testified, the trial court granted the motion to suppress, based on its findings that Shayne did not consent to the search and that the police lacked probable cause to search the luggage. The trial court found that without the evidence discovered in the search, the State lacked any basis for forfeiture of the cash. The court ordered the State to return the cash to Shayne.

¶ 2    On appeal, the State argues: (1) Shayne lacked standing to claim the cash; (2) the court erred when it suppressed the evidence; and (3) the State showed probable cause for forfeiture of the cash. We find: (1) Shayne's possession of the cash at the time of the seizure gave him standing to claim the cash; (2) Shayne's testimony adequately supports the trial court's decision to suppress the evidence; and (3) without the suppressed evidence, the State cannot prove its case for forfeiture of the cash. Accordingly, we affirm the trial court's judgment.

¶ 3                                    BACKGROUND

¶ 4    On January 23, 2001, Sergeant Daryl Johnson of the Chicago police department received a report that Shayne, a Canadian citizen, paid cash for a one-way ticket for a train trip from Chicago to Seattle, and Shayne bought the ticket less than 24 hours before the train's scheduled departure. Johnson and his partner found Shayne on the train platform. Shayne

-2-

agreed to answer some questions about his trip. Johnson searched Shayne's luggage, where he found a number of cellophane-wrapped bundles of cash. Johnson took the luggage and the cash to the police station. He did not arrest Shayne.

¶ 5        On April 26, 2001, the State's Attorney for Cook County filed a complaint for forfeiture of the cash seized in Shayne's luggage. According to the complaint, Shayne agreed to permit Johnson to search his luggage, and the officers found a total of $280,020, mostly in $20 bills. Shayne, through counsel, filed a verified claim for the cash. He said he acquired the cash on "numerous dates," in "multiple transfers over a lifetime."

¶ 6        The State moved for summary judgment, arguing that Shayne lacked standing to claim the cash. The State relied on Shayne's answers to interrogatories, in which he said his father, John Kolody, loaned him the money, which John had received from John's sister, Mildred Morrison. The trial court denied the motion for summary judgment.

¶ 7        Shayne moved to suppress the evidence seized from him at the train station. The trial court heard evidence on the motion at the trial on the State's complaint.

¶ 8        At the bench trial, held in 2011, the State called Shayne as an adverse witness. Shayne testified that he and his friend, Luis, were heading to Canada for a vacation, when John called Shayne and asked him to come to Chicago. Shayne and Luis drove a rental car from Seattle to a hotel in Joliet that John chose. John asked Shayne to take some cash back to John's home in Canada. Luis and Shayne visited Chicago. After two days, Luis drove back home alone. On January 22, 2001, John came to Shayne's hotel room carrying a bag that held $328,000. They counted and packaged the money. John suggested wrapping the bundles in cellophane because he "was concerned about there being a dog sniff on the train." John told Shayne he got $330,000 from Mildred, and he used the money for gambling.

¶ 9        Shayne testified that when Johnson stopped him on the train platform the next morning, Shayne told Johnson truthfully that he had visited Chicago for a few days. He did not consent to the search of his luggage or the seizure of the cash.

¶ 10       Johnson's testimony conflicted with Shayne's testimony about the encounter on the train platform. According to Johnson, Shayne said he took the train from Seattle to Chicago, and he stayed in Chicago for a few days. Shayne consented to the search of his luggage. Johnson admitted he did not ask Shayne to sign a form showing his consent to the search. Shayne could not find the key for one piece of luggage, so Shayne permitted Johnson's partner to pry the zipper open. The officers found the cash in that bag. According to Johnson, Shayne did not answer a question about who owned the cash. Shayne admitted that he stayed at a hotel in Joliet, and not in Chicago, all of the nights he stayed in the area. Johnson said that ended the conversation.

¶ 11       The assistant State's Attorney asked whether Johnson asked Shayne how much money the luggage held. The court noted that Johnson had already testified that he had recounted all of the conversation with Shayne. The assistant State's Attorney said, "I'm trying to cue [Johnson]." The court disallowed the leading question, but Johnson subsequently testified that Shayne once said that the bag might have "100 to 200,000" in cash, and later Shayne said he had a total of $330,000 in cash in his luggage. Johnson said he and his partner took the cash to a police station where a K-9 unit performed a sniff test.

¶ 12    Garry Zuelke, the officer who conducted the sniff test, testified that he and the dog, Duke, both participated in an eight-week training program for performing sniff tests. The program trained Duke to alert to narcotics in trace amounts found on currency. On January 23, 2001, Duke alerted to the currency and the luggage that had carried the currency. Shayne's attorney presented evidence that in 2002, Shayne requested all records concerning Duke's training, testing, and results from Duke's work for the police department. At trial, Zuelke admitted that he had destroyed all such records.

¶ 13    The State stipulated that Shayne had no arrests and no convictions. The State called Michael Cowley as its final witness. Cowley, a former member of the Royal Canadian Mounted Police, read a newspaper article about the seizure in Chicago of cash from a Canadian citizen. He contacted Chicago police, who gave him more information about Shayne. Cowley then searched for Shayne's name in a Canadian database. Although Cowley printed out the results of his search, neither he nor the assistant State's Attorney provided copies of the search results to defense counsel. The court sustained defense counsel's objections to hearsay testimony about what Cowley found in the database.

¶ 14    Shayne moved for judgment at the close of the State's evidence. The court said:

"There was testimony that there was no suspicion that a crime had been committed, that the claimant was asked questions, and according to Sergeant Johnson, gave truthful answers, that the money was not contraband, that there's obviously no *** law against people having money with them, there's no information at all that a crime was being committed and there was no unusual smell, there was no warrant, there was no consent to search that was signed and *** as far as the spoliation of evidence, the fact that *** the City had no records other than a certificate that really didn't mean anything as far as the training of either the dog or the officer that was handling the dog *** and for all those other reasons *** the motion to [suppress] is granted."

¶ 15    Without the evidence obtained through the stop at the train station, the State could not prove its case for forfeiture, so the court entered a judgment in favor of Shayne for the return of the cash. The State now appeals.

¶ 16                                   ANALYSIS
¶ 17                                   Standing
¶ 18    The State first argues that Shayne lacks standing to contest the forfeiture of the cash found in his luggage. The reasoning of the court in *In re Guardianship of K.R.J.*, 405 Ill. App. 3d 527 (2010), fully applies here. The *K.R.J.* court said:

"Generally, the question of standing is reviewed *de novo*. [Citation.] However, the trial court here also heard evidence and made certain factual findings. Where a trial court makes factual findings, this court reviews those factual findings under the manifest-weight-of-the-evidence standard. [Citation.]

Consequently, this court will review the trial court's factual findings under the manifest-weight-of-the-evidence standard and apply those facts *de novo* to the question of whether petitioners have standing ***." *In re Guardianship of K.R.J.*, 405 Ill. App.

3d 527, 535 (2010).

¶ 19 For this issue, the State bore the burden of proving that Shayne suffered no injury to any legally cognizable interest. *People v. $1,124,905 U.S. Currency & One 1988 Chevrolet Astro Van*, 177 Ill. 2d 314, 331 (1997). In forfeiture proceedings under the federal statute, "where a claimant asserts a *possessory interest* and provides some explanation of it (e.g., that he is holding the item for a friend), he will have standing." (Emphasis in original). *United States v. $191,910.00 in U.S. Currency*, 16 F.3d 1051, 1058 (9th Cir. 1994), *superseded by statute on another ground as stated in United States v. $80,180.00 in U.S. Currency*, 303 F.3d 1182, 1184 (9th Cir. 2002). Illinois courts recognize standing to contest forfeiture more liberally than the federal courts. *$1,124,905*, 177 Ill. 2d at 329. While the claimant would need to prove ownership as part of an innocent-owner defense, our supreme court expressly held that a claimant need not show such ownership to establish standing to contest a forfeiture. *$1,124,905*, 177 Ill. 2d at 330-31. The court should construe legally cognizable interests, sufficient to establish standing, broadly to include any kind of legal or equitable interest, including possession without ownership. See *$1,124,905*, 177 Ill. 2d at 329-31. Shayne's possession of the cash gave him a sufficient interest in the cash to contest its forfeiture, even though he did not claim he owned the cash at the time of the seizure. Therefore, the trial court correctly held that Shayne had standing to contest the forfeiture.

¶ 20 Motion to Suppress

¶ 21 The Exclusionary Rule in Forfeiture Proceedings

¶ 22 Next, the State argues that the exclusionary rule does not apply to proceedings under the Act and, therefore, the trial court should not have permitted Shayne to file the motion to suppress the evidence seized at the train station. We review this issue of law *de novo*. See *People v. Krueger*, 175 Ill. 2d 60, 64 (1996).

¶ 23 The Act itself directs us to interpret the Act in light of federal forfeiture statutes, unless the provisions of the federal statutes conflict with the Act. 725 ILCS 150/2 (West 2000); *People ex rel. Devine v. $30,700.00 United States Currency*, 199 Ill. 2d 142, 149 (2002). The United States Supreme Court held that, in forfeiture proceedings, the fourth amendment to the United States Constitution required exclusion of evidence seized in an illegal search. *United States v. James Daniel Good Real Property*, 510 U.S. 43, 49, 51-52 (1993); *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 697-702 (1965). Because the exclusionary rule applies to forfeiture proceedings, the trial court properly allowed Shayne to challenge the evidence of the currency seized at the train station on grounds that the search and seizure violated Shayne's constitutional rights.

¶ 24 Weight of the Evidence

¶ 25 The State also argues that the evidence does not support the trial court's decision to grant the motion to suppress. "In reviewing a ruling on a motion to quash arrest and suppress evidence, we apply a two-part standard of review. [Citation.] While we accord great deference to the trial court's factual findings, and will reverse those findings only if they are against the manifest weight of the evidence, we review *de novo* the court's ultimate ruling

on a motion to suppress involving probable cause." *People v. Grant*, 2013 IL 112734, ¶ 12. We examine the evidence with deference to the trial court, who saw the witnesses and thus could better assess their credibility. *People v. Smith*, 185 Ill. 2d 532, 541 (1999). The State must justify the search on the basis of the facts known to police at the time of the search. See *People v. Chapman*, 194 Ill. 2d 186, 217 (2000); *People v. Harper*, 237 Ill. App. 3d 202, 205-07 (1992).

¶ 26    The court found credible Shayne's testimony that, at the train station, he answered the officers' questions honestly, and he did not consent to the search of his luggage. The State contends that the trial court did not consider Johnson's testimony, but we find no support in the record for the State's claim. We presume that the trial court considered all of the evidence unless the record indicates the court did not do so. See *Kee & Chapell Dairy Co. v. Pennsylvania Co.*, 291 Ill. 248, 252 (1920); *People v. Morgan*, 306 Ill. App. 3d 616, 633 (1999). The State here has not overcome the presumption. The trial court apparently rejected Johnson's testimony that Shayne agreed to the search and that Shayne told the officers that he came to Chicago on a train from Seattle. The court also rejected the testimony that the assistant State's Attorney elicited from Johnson with leading questions, that Shayne initially told Johnson, falsely, that he had $100,000 to $200,000 in cash.

¶ 27    Next, the State claims that the trial court should not have found Shayne's testimony credible, because Shayne's prior sworn statements contradicted his testimony. The State points out that Shayne verified the initial claim, in which he said he received the cash in "multiple transfers over a lifetime." In answers to interrogatories, Shayne said that John's $330,000 came from Mildred. At trial, Shayne explained that John told him Mildred gave John $330,000 to use for gambling, and after gambling, John had the $328,000 that John and Shayne packaged. While the testimony conflicts with the vague assertions of the initial claim, we cannot say that the conflict permits us to overturn the trial court's assessment of the credibility of Shayne's testimony. See *People v. Vaughn*, 2011 IL App (1st) 092834, ¶ 28. We find nothing inherently incredible in Shayne's testimony, and we see no sufficient basis in this record for rejecting the court's credibility assessments. See *People v. Universal Public Transportation, Inc.*, 2012 IL App (1st) 073303-B, ¶ 34.

¶ 28    Thus, to assess the propriety of suppressing the evidence discovered in the search of Shayne's luggage, we take as true the facts to which Shayne testified and the facts established by other evidence not in conflict with Shayne's testimony. Johnson testified that at the time of the search, he had heard from an unidentified source that Shayne paid cash for a one-way train ticket for a trip from Chicago to Seattle, with the train departing less than 24 hours after Shayne bought the ticket. The State emphasizes that in the search, police found large sums of cash, packed in cellophane, and later a dog alerted to the cash. The State also asserts that Shayne gave inconsistent explanations of the source of the cash. However, none of the evidence the State stresses can justify the search made without consent, because the State found the cash only after its officers searched Shayne's luggage. See *Chapman*, 194 Ill. 2d at 217. We agree with the trial court that the cash purchase of a one-way ticket for a long train trip, less than 24 hours before the start of the trip, standing alone, does not give police probable cause to search the luggage of the person taking the trip. As the court held in *United States v. Goodwin*, 449 F.3d 766, 767 (7th Cir. 2006), the "last-minute cash purchase of a

one-way ticket[ ]is deemed by enforcers of the drug laws to be the profile of a drug courier, [citation], though not to establish probable cause or even reasonable suspicion to believe that someone who fits the profile *is* a drug courier." (Emphasis in original.)

¶ 29    Because Johnson lacked probable cause to search Shayne's luggage, the trial court properly suppressed the evidence found in the search. *One 1958 Plymouth*, 380 U.S. at 697. Without the evidence derived from the search, the State had no evidence to support its complaint for forfeiture of the cash. Therefore, we affirm the judgment dismissing the complaint for forfeiture of the cash found in Shayne's luggage and ordering the State to return the cash to Shayne.

¶ 30                                              CONCLUSION

¶ 31    Shayne had standing to challenge the State's complaint for forfeiture of the cash found in Shayne's luggage. When Johnson chose to search Shayne's luggage, without Shayne's consent, Johnson had heard only that Shayne had paid cash for a one-way train trip from Chicago to Seattle, with the trip to start less than one day after Shayne bought the ticket. That information did not give Johnson probable cause to search the luggage. The trial court correctly suppressed the evidence discovered due to the illegal search. Without that evidence, the State lacked grounds for its petition for forfeiture of the cash. Therefore, the trial court did not err when it granted Shayne a judgment ordering the State to return to Shayne the cash the State seized.

¶ 32    Affirmed.