2020 IL App (1st) 19-0922U

FIRST DISTRICT
FIRST DIVISION
November 23, 2020

No. 1-19-0922

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| *ex rel*. ANITA ALVAREZ, | ) | Circuit Court of |
| | ) | Cook County |
| Plaintiff-Appellee, | ) | |
| | ) | No. 15 COFO 3667 |
| v. | ) | |
| | ) | Honorable |
| $59,914 UNITED STATES CURRENCY; | ) | Nichole C. Patton, |
| $53,140 UNITED STATES CURRENCY; | ) | Judge Presiding. |
| $67,109 UNITED STATES CURRENCY; | ) | |
| $7,000 UNITED STATES CURRENCY; and | ) | |
| $36,580 UNITED STATES CURRENCY, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

_____

JUSTICE COGHLAN delivered the judgment of the court.
Justice Pierce concurred in the judgment.
Justice Hyman dissented.

**ORDER**

¶ 1    *Held*:   Default judicial forfeiture judgment was not void because the State served statutory notice of the forfeiture proceedings to the "owner or interest holder" of the seized property.

¶ 2    In this civil asset forfeiture case**,** petitioner Ameen Salaam appeals from the denial of his motion to vacate a final judgment of judicial forfeiture of $223,743 in United States Currency and to dismiss the forfeiture complaint. On appeal, Salaam argues that the forfeiture judgment was

void because the State failed to provide him, as an "interest holder" of the money, with statutory notice of the forfeiture proceedings. For the reasons that follow, we affirm.

¶ 3                                             BACKGROUND

¶ 4         On September 15, 2015, Chicago Police Officers responded to call about a "suspicious" white utility van located at the 8600 block of Saginaw in Chicago. Officers arrived at the area and observed a vehicle matching the "suspicious" vehicle description. The officers "curbed" the vehicle in the area of 2426 East 83rd Street for no rear vehicle registration light.

¶ 5         The driver of the "suspicious" vehicle, later identified as Allen Tyler, could not produce either a valid driver's license or insurance. Tyler received a citation for "rear plate not being visible." During the stop, the officers "smelled a strong odor of cannabis emanating from a large soft sided bag pulled closed but not locked or zipped on the passenger seat." The officers "recovered one clear ziplock bag containing a green leafy substance suspect cannabis and two clear knotted bags containing a white powdered substance suspect cocaine from the bag." The officers also recovered five "large bundles of USC in ziplocked and plastic bags from the bag."

¶ 6         While still at the scene, Mohammad Khalid approached the officers and identified himself "as an employer of" Tyler and "wondered what was going on with his employee." A license plate check revealed that the vehicle was owned by Ameen Salaam *d/b/a* Infinite Heating and Cooling Refrigeration, located at 2020 N. California Ave., Suite 7, Chicago.

¶ 7         Tyler was arrested[1] and during a custodial search, $17 and "a silver spoon with brown substance suspect heroin" were recovered. The police seized 120 grams of cannabis, 84 grams of

---

[1] Tyler was charged with: (1) a class X manufacture and delivery of a controlled substance, (2) a class 1 manufacture and delivery of a controlled substance, (3) a class 3 manufacture and delivery cannabis 30-500 grams, and (4) a class 4 possession of a controlled substance.

cocaine, and five bags containing money in the amount of $59,914, $53,140, $67,109, $7,000, and $36,580, for a total of $223,743.[2] At the police station, a canine specially trained in the detection of cannabis and controlled substances began a "search" for the bags containing the money that had been hidden and gave a positive alert at one of the bags, indicating "that the money had a positive residual odor of narcotics."

¶ 8    On November 12, 2015, the State filed a judicial *in rem* complaint for forfeiture (725 ILCS 150/9(A) (2014)) of the $223,743 seized during the arrest, asserting that the money was proceeds from illegal narcotic transactions. See 720 ILCS 550/12 (a)(5) (West 2014) ("all moneys *** used, or intended to be used, to commit or in any manner to facilitate any violation of [the Cannabis Control Act]" are subject to forfeiture). The complaint requested "[t]hat all rights and interests of each and every party claiming an interest in the [five bags of money] be terminated."

¶ 9    On that same day, the State served "statutory notice" of the forfeiture proceedings by certified mail, with a return receipt requested, and regular mail to Tyler at 9135 South Blackstone Avenue in Chicago, which was his last known address provided at the time of his arrest. 725 ILCS 150/4(1)(B) (West 2014). The certified mail and regular mail were retuned as undeliverable. Although notice was effective upon mailing,[3] the State also served notice of the forfeiture

---

[2] Two days later on September 17, 2015, CBS Local News reported on the arrest in an article titled, "Duffel Bag Full of Cash, Drugs Found During Traffic Stop." The article identified Tyler and disclosed that "officers found a duffel bag in the front passenger seat of the vehicle containing $220,000 in cash, 125 grams of marijuana and 85 grams of cocaine."

[3] The version of the statute in effect at the time of service stated that notice "is effective upon personal service, the last date of publication, or the mailing of written notice, whichever is earlier." 725 ILCS 150/4(B) (West 2014). Public Act 100-512 § 170, eff. July 1, 2018, amended the statute's language to reflect the current version of the statute in all material respects.

proceedings by publication in the Daily Law Bulletin to Tyler "and any other unknown owner."[4] 725 ILCS 150/4(2) (West 2014).

¶ 10     No one asserting an interest in the money subject to forfeiture filed an answer or appearance in the forfeiture proceedings. 725 ILCS 150/9 (E) (West 2014). On January 20, 2016, the trial court entered an *ex parte* forfeiture order, resulting in the forfeiture of the money that "was used in the commission of a criminal offense" under the Cannabis Control Act (720 ILCS 550/12 (West 2014)) "while in possession and control" of Tyler. The trial court found that "each and all of the persons entitled to notice of seizure and forfeiture were properly notified according to the statutes."

¶ 11     More than two years later on November 2, 2018, Salaam[5] moved to vacate the default judgment of forfeiture and dismiss the forfeiture complaint, arguing that the forfeiture order was "issued without jurisdiction" because the State failed to serve upon him notice of the forfeiture proceedings. Salaam claimed that as the owner of the vehicle where the $223,743 was seized, he was an "interest holder" of the money and entitled to notice. The trial court denied the motion, finding that the court had *in rem* jurisdiction over the seized controlled substances and money, and

---

[4] The publication stated that a default judgment may be entered if an answer or appearance was not filed "on or before January 18, 2016."

[5] The record reveals that on June 1, 2016, Tyler, while out on bond in this case, was arrested for distribution of cocaine and his case proceeded in federal court. Salaam was Tyler's co-defendant in the federal criminal case.

As part of the federal investigation leading to their arrest, Drug Enforcement Administration agents worked with two "cooperating sources," who "met and negotiated the sale of cocaine" from Salaam and Tyler. One of the cooperating sources knew Salaam "as a ranking member of the Black P Stone criminal street gang." On the day of arrest, the cooperating sources went to Salaam's house to purchase cocaine and Tyler led them downstairs to Salaam, where the narcotics transaction was completed. After they sold the cocaine, Salaam and Tyler left Salaam's house together and drove away in Salaam's vehicle. Agents surveilling Salaam's vehicle conducted an investigative stop, which lead to Salaam's and Tyler's arrest.

In June of 2017, both Tyler and Salaam pled guilty to the distribution of cocaine charges. On January 30, 2018, the state court criminal charges pending against Tyler referenced in footnote 1 herein were dismissed.

Salaam was not entitled to notice because he was "not an owner or interest holder under the statute."

¶ 12      The State elected not to file a brief on appeal. In this case, the record is simple and the error can be considered without additional briefing. *First Capitol Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976); *Direct Auto Insurance Co. v. Koziol*, 2018 IL App (1st) 171931, ¶ 1. Therefore, this court entered an order on its own motion taking this appeal on appellant's brief only.

¶ 13                                          ANALYSIS

¶ 14      Salaam claims that the trial court erred in denying his motion to vacate because the failure to serve statutory notice of the judicial forfeiture proceedings upon him as an "interest holder" of the money violated his due process rights and rendered forfeiture of the money void.

¶ 15      A forfeiture action is a civil *in rem* proceeding brought against property used in the commission of a crime. *People v. Strong*, 151 Ill. App. 3d 28, 34 (1986). "Currency is subject to forfeiture when it is derived from the sale of illegal drugs." *People v. $5,970 United States Currency,* 279 Ill. App. 3d 583, 587 (1996). Under the Drug Asset Forfeiture Procedure Act (Act) (725 ILCS 150/4 (West 2014)), an "owner or interest holder" of the seized money is entitled to notice of pending forfeiture.

¶ 16      "Where a court lacks jurisdiction of the parties or the subject matter, or exceeds its statutory power to act, any resulting judgment is void and may be attacked either directly or indirectly at any time." *People v. Raczkowski*, 359 Ill. App. 3d 494, 497 (2005). Whether a judgment is void due to the lack of proper notice presents a legal issue reviewed *de novo*. *McCarthy v. Pointer*, 2013 IL App (1st) 121688, ¶ 12; *Deutsche Bank National Trust Co. v. Hall-Pilate*, 2011 IL App (1st)

102632, ¶ 12.

¶ 17   Here, Salaam, and not Tyler, is contesting the sufficiency of notice, arguing that "there is no reason to presume or conclude that Tyler's possession of the narcotics, or the money, was exclusive to him, to the exclusion of Salaam." But the police recovered the illegal narcotics and $223,743 from a bag "pulled closed" on the passenger seat of the vehicle within reach and in close proximity to Tyler, who exercised exclusive dominion and control over the bag. See *People v. Schmalz*, 194 Ill. 2d 75, 82 (2000) ("[a]ctual possession does not require present personal touching of the illicit material, but, rather, present personal dominion over it"); *People v. Four Thousand & Eight Hundred Fifty Dollars ($4,850) United States Currency*, 2011 IL App (4th) 100528, ¶ 17 ("[o]wnership of personal property, including money, is presumed from the possession of it"). Salaam was not in the vehicle and did not exercise immediate dominion or control over the bag, which was not hidden or locked in any compartment of the "work van" and nothing in the record establishes that Salaam's or his company's name was on the bag. See *Schmalz*, 194 Ill. 2d at 82 (possession may be joint "if two or more persons share immediate and exclusive control or share the intention and power to exercise control"); *People v. McIntyre,* 2011 IL App (2d) 100889, ¶ 17 ("even in cases where there is joint possession, the evidence must support a conclusion that the defendant had control, or the ability to exercise control, over the contraband").

¶ 18   Moreover, there is no evidence in the record that at the time of seizure or at any time thereafter, Tyler denounced ownership of the $223,743, or that Khalid, Salaam's other employee who was present at the scene, asserted any ownership interest in the money on Salaam's behalf. See *People v. $9,290 in United States Currency*, 372 Ill. App. 3d 267, 270 (2007) ("[t]he issue, after all, was who owned the property in the box, not who leased the box itself."). Salaam's

entitlement to notice would have been different as to the van. Under the facts of this case, the State complied with the Act's notice requirement when it served notice upon Tyler as "owner or interest holder" of the $223,743.

¶ 19     Even assuming *arguendo* that Salaam was entitled to service of notice, Salaam's due process rights were not infringed because he otherwise had actual notice of the forfeiture proceedings. "The object of notice is to inform the party notified, and if the information is obtained in any way other than by formal notice, the object of notice is attained." *Campbell v. Cook County Sheriff's Merit Board,* 215 Ill. App. 3d 868, 870 (1991).

¶ 20     Salaam's attorney in this appeal was the same attorney who represented him in the federal criminal case, defended Tyler in the state criminal charges in this case, and "step[ped] up on behalf" of Tyler in his initial appearance in the federal proceedings. See *Stratton v. Wenona Community Unit District No. 1*, 133 Ill. 2d 413, 432 (1990) ("[d]ue process entails an orderly proceeding wherein a person is served with notice, actual or constructive, and has an opportunity to be heard and to enforce and protect his rights"). Likewise, Salaam and Tyler had an ongoing relationship and it stands to reason that Tyler, if not Khalid, would have notified Salaam that $223,743 had been seized from his "work van." Notably, *if* Salaam was an "owner or interest holder," he did nothing to protect any interest he had in the $223,743 for more than three years after that money was seized.[6] See *People v. One Residence Located at 1403 E. Parham St.*, 251 Ill. App. 3d 198, 202 (1993) (the purpose of the Act is "to deter individuals from trafficking in controlled substances

---

[6] The statute of limitations for any criminal charges in this case expired on September 15, 2018. 720 ILCS 5/3-5 (b) (West 2014). On November 2, 2018, Salaam filed this action seeking to vacate the judicial forfeiture proceedings asserting his status as an "interest holder" in the money, which "had a positive residual odor of narcotics."

by imposing a civil penalty in addition to the criminal penalties").

¶ 21            Although we agree with the dissent that an "owner or interest holder" is entitled to statutory notice of forfeiture proceedings under the Act before his or her property may be forfeited, our agreement ends there. The dissent reasons that Salaam was entitled to notice not because he owned the illegal drugs and $223,743 and not because he was in actual possession or anywhere in the vicinity of the illegal drugs and $223,743, but because he owned the van, by default, he "might have a legally recognized interest" in the contents of the bag. *Infra* ¶ 38. The dissent takes that position even though, as stated, the bag had no markings identifying it as belonging to Salaam or his business and the bag was not hidden anywhere inside the van.

¶ 22            Under Illinois case law, individuals entitled to notice under the Act are "owners or interest holders," including those individuals in possession of or having a connection to the seized property. See *$9,290 in United States Currency,* 372 Ill. App. 3d at 269 (allegations in the complaint that claimant placed property that was seized in a safety deposit box entitled claimant to notice of forfeiture proceedings); *People ex rel. Kelly v. Sixteen Thousand Five Hundred Dollars ($16,500) United States Currency*, 2014 IL App (5th) 130075, ¶¶ 3, 27 (petitioners who turned over money to the police that they received in a package mistakenly mailed to their house were entitled to notice "as interest holders of the property"); *People v. $280,020 in United States Currency,* 2013 IL App (1st) 111820, ¶ 19 (claimant's "possession of the cash gave him a sufficient interest in the cash to contest its forfeiture, even though he did not claim he owned the cash at the time of the seizure"). Based on the facts of this case, Salaam's status as an "owner or interest holder" applies to the van, not the seized $223,743. For the reasons discussed, "[a]voiding injustice here" does not require a finding that the judicial forfeiture proceedings as to the $223,743 were void because the

State did not "serve notice on [Salaam] personally or by mail." *Infra* ¶ 38; see *People ex rel. Devine v. $30,700.00 United States Currency*, 199 Ill. 2d 142, 156 (2002) ("It is important to note, however, that in examining the sufficiency of notice with regard to due process a court may consider the character of the proceedings and the practicalities and peculiarities of the case.").

¶ 23    As a final matter, after deliberations, the majority concluded that this disposition does not adhere to the standards required for publication as an opinion because this disposition applies the facts of this case to well-established caselaw. It is the majority's opinion that this disposition does not establish a new rule of law or modify, explain or criticize an existing rule of law nor does it resolve, create, or avoid an apparent conflict of authority within the Appellate Court. See Ill. S. Ct. Rule 23(a)(1)-(2) (eff. Apr. 1, 2018) ("A case may be disposed of by an opinion only when a majority of the panel deciding the case determines that" the criteria for disposition as an opinion is satisfied.)

¶ 24                                     CONCLUSION

¶ 25    For the reasons stated, we affirm the trial court's order denying Salaam's motion to vacate the default judicial forfeiture judgment and dismiss the forfeiture complaint.

¶ 26    Affirmed.

¶ 27    JUSTICE HYMAN dissenting:

¶ 28    Allen Tyler was working when arrested, driving a van owned by his boss, Ameen Salaam. The majority concludes (i) Tyler had exclusive control of a bag of money found on the passenger seat and (ii) Salaam was not entitled to notice of a forfeiture proceeding involving the money because, at the time of the arrest, he was not in the van. But, as the van's owner, Salaam had an interest in its contents that entitled him to notice of the forfeiture proceeding under section 4 of the

Drug Asset Forfeiture Procedure Act (725 ILCS 150/4 (West 2014) (Act)). Because the State opted to forgo the Act's notice requirement and failed to provide actual notice to Salaam, the trial court lacked jurisdiction, making the forfeiture judgment void.

¶ 29    I dissent and would grant the motion to vacate the judgment and dismiss the forfeiture complaint. I also dissent on the majority issuing this decision as an order under Supreme Court Rule 23(b) (eff. Apr. 1, 2018).

¶ 30                                Owner or Interest Holder

¶ 31    Section 4 of the Act provides that a "complaint for forfeiture or a notice of pending forfeiture shall be served upon the property owner or interest holder." 725 ILCS 150/4 (West 2014). If the owner or interest holder's address is known, he or she *must* be served notice by personal service or certified mail, return receipt requested, along with first class mail. 725 ILCS 150/4(1)(A), (B) (West 2014).

¶ 32    A conviction for unlawful possession of a controlled substance requires the State prove the defendant had knowledge of the presence of the controlled substance and he or she also had immediate and exclusive possession or control of the narcotics. *People v. Woods*, 214 Ill. 2d 455, 466 (2005). The majority finds Salaam was not entitled to notice of the forfeiture proceeding because the State had every "reason to presume or conclude that Tyler's possession" of the money and drugs was exclusive, and that Salaam was not a known "interest holder" entitled to statutory notice. That belies the facts and ignores the intention and objective of the Act.

¶ 33    Under Illinois law, exclusive possession includes joint possession. *People v. Embry*, 20 Ill. 2d 331, 335-36 (1960). If two or more people "share immediate and exclusive control or share *the intention and power to exercise control*, then each has possession." *People v. Schmalz*, 194 Ill. 2d

10

75, 82 (2000) (emphasis added). Thus, a person who may have a connection to the property the government seeks to forfeit must be notified.

¶ 34   The majority addresses Tyler's exclusive, immediate control of the money based on his proximity to it, brushing off Salaam's interest because he was not in the van. Numerous appellate court decisions, however, explain that some tangible form of ownership must be proved to support a presumption of a person's control over the location where drugs are found, even if the person is on the premises. See, *e.g.*, *People v. Blue*, 343 Ill. App. 3d 927 (2003) (evidence of control insufficient where there were no bills, rent receipts, pieces of clothing, or mail addressed to defendant at location); *People v. Maldonado*, 2015 IL App (1st) 131874, ¶¶ 27-29 (evidence of control insufficient where delivery receipt, one piece of junk mail, and one unidentifiable piece of mail had name of defendant and wife as addressee at location). As the majority notes, a license plate check showed that Tyler did not own the van, but rather the owner was "Ameen Salaam *d/b/a* Infinite Heating and Cooling." Thus, the State presuming that Tyler exercised exclusive control over the van and its contents amounts to pure speculation.

¶ 35   Moreover, in the majority's view, the absence of an identifying marking on the bag provides a key piece of evidence as to whether Salaam shared the intention and power to exercise control of the bag. But the absence of a marking is neither fish nor fowl, that is, it neither suggests nor refutes Salaam's intention and power to exercise control. Yet, the majority infers significance to it without offering valid justification.

¶ 36   In addition, Salaam satisfies the "interest holder" provision. The majority finds that to be an interest holder, a claimant must be in possession of the seized property and cites several cases, including *People ex rel. Kelly v. Sixteen Thousand Five Hundred Dollars ($16,500) United States*

*Currency*, 2014 IL App (5th) 130075 and *People v. $280,020 in United States Currency,* 2013 IL App (1st) 111820, ¶ 19, holding that a party that possesses seized property is an "interest holder" entitled to notice of the forfeiture proceeding. I agree, but nothing in the Act or the cases the majority cites states that possession is the only requirement. Indeed, the majority cites no cases holding that a vehicle owner's interest only extends to the vehicle and not its contents.

¶ 37　　　The plain language of the Act does not support the majority's narrow view of "interest holder" as one in proximity to or in possession of the seized property. One could reasonably conclude Salaam had an interest in property in the van. The majority notes that in determining whether notice has been constitutionally sufficient, "a court may consider the character of the proceedings and the practicalities and peculiarities of the case." See *People ex rel. Devine v. $30,700.00 United States Currency*, 199 Ill. 2d 142, 148, 155 (2002). Yet, the majority assumes the $223,743 has no connection whatever to Salaam without considering "the practicalities and peculiarities," including who owned the vehicle and had access to it, whether it was a personal or business vehicle, and whether the property seized could reasonably belong to someone who was not present in the van. An assumption, and a shallow assumption at that, has deprived an interest holder of actual notice, a fundamental right in a forfeiture proceeding. *Rodriguez v. Brady*, 2017 IL App (3d) 160439 ¶ 24 ("both the United States and Illinois Constitutions dictate that where the government attempts to deprive a person of property, it must first provide that person with notice and an opportunity to be heard.").

¶ 38　　　The law disfavors forfeiture because forfeiture extinguishes all rights in the asset. *People v. Wade*, 326 Ill. App. 3d 396, 402 (2001), as modified (Nov. 30, 2001). So the law must be narrowly construed to avoid injustice. *Id.* Here, that means applying the Act to a potential interest

holder, Salaam, who might have a legally recognized interest as the owner of the van in which the bag of money was found. The State knew Salaam owned the van. The State knew his address. Under the Act, Salaam had a right to be heard, and the State had an obligation to serve notice on him personally or by mail.

¶ 39    The State's failure to give him actual notice deprived the trial court of jurisdiction over an interest holder, rendering the judgment void. *White v. Ratcliffe*, 285 Ill. App. 3d 758, 763-64 (1996) ("judgment entered without proper service of process is void even if the party against whom a judgment is entered had notice of the proceedings").

¶ 40                                        Actual Notice

¶ 41    Because the majority found Salaam was not entitled to notice, it did not address whether he had actual notice of the forfeiture complaint, an argument the State raised in the trial court. The State did not file a reply brief, so the State forfeited this issue. Ill. Sup. Ct. Rule 341(h)(7)(i) (eff. Feb. 6, 2013) ("[p]oints not argued are forfeited"). Nonetheless, the State failed to show Salaam received actual notice of the forfeiture proceeding. In the trial court, the State argued that Salaam knew of the forfeiture proceeding because his employee, Mohammad Khalid, witnessed Tyler's arrest. The State further argued that if the money, a significant amount, belonged to Salaam or his company, he would have taken action to recover it. Nonsense.

¶ 42    Even if Salaam knew of Tyler's arrest, which, for sake of argument, constitutes a reasonable presumption, that does not amount to *actual* notice of a separate forfeiture proceeding, which proceeding was filed two months later. Khalid saw Tyler get arrested and may have known about the seizure of the money and drugs. And he or Tyler may have told Salaam. So what? Actual notice means notice as statutorily required.

¶ 43       The majority also notes that Salaam's attorney in this appeal represented him in the federal criminal case, defended Tyler in the state criminal charges, and briefly represented Tyler in the federal proceedings. I fail to see the significance, as we certainly cannot presume that an attorney shares information about one client's case with another client. Regardless, the Act, neither directly nor indirectly, excuses actual notice because of the value of the seized property or that someone may inform a potential interest holder of the confiscation.

¶ 44       The majority cites no cases holding that knowledge of the seizure constitutes knowledge of the forfeiture proceeding or satisfies the statutory notice requirement.

¶ 45       Moreover, the due process clauses of both the United States and Illinois Constitutions dictate that where the government attempts to deprive a person of property, it first must provide that person with notice and an opportunity to be heard. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."); *Stratton v. Wenona Community Unit District No. 1*, 133 Ill.2d 413, 432 (1990) ("Due process entails an orderly proceeding wherein a person is served with notice, actual or constructive, and has an opportunity to be heard and to enforce and protect his rights."). Compliance with the Act's notice requirements is irrelevant if the notice is constitutionally deficient. See *People ex rel. Devine v. $30,700.00 United States Currency*, 199 Ill. 2d 142, 148, 155 (2002) (analyzing as separate issues whether notice was statutorily sufficient and whether it was constitutionally sufficient). To pass constitutional muster, the notice provided to an owner of assets subject to civil forfeiture must be "reasonably calculated, under all the

circumstances, to apprise interested parties" of the pending forfeiture. *Mullane*, 339 U.S. at 314. In the absence of actual notice of the forfeiture proceeding and the opportunity to be heard, neither the Act nor the due process clause are satisfied.

¶ 46 The State failed to give Salaam actual notice of the forfeiture proceedings, as mandated by the Act. This lack of notice voids the State's forfeiture judgment. *White*, 285 Ill. App. 3d at 763-64.

¶ 47 I would grant Salaam's motion to vacate the judgment and dismiss the forfeiture complaint.

¶ 48 Designation as Rule 23 Order

¶ 49 Rule 23(a) allows for publication when a majority of the panel concludes that a decision either "establishes a new rule of law or modifies, explains or criticizes an existing rule of law" or when "the decision resolves, creates, or avoids an apparent conflict of authority within the Appellate Court." Ill. S. Ct. Rule 23(a)(1)-(2) (eff. Apr. 1, 2018). This case should have been published as an opinion under Supreme Court Rule 23(a) (eff. Apr. 1, 2018) because it meets one of the Rule's criteria.

¶ 50 The majority modifies or explains a rule of law, satisfying a Rule 23(a) criterion for publication. Under the majority opinion, an interest holder entitled to notice must possess the seized property, though the Act does not equate "interest holders" with those in possession. Further, the majority holds that notice of seizure of property alone satisfies the Act, even in the absence of notice of the proceeding. But this holding has no support in (i) the Act, which requires notice of the "forfeiture proceeding," (ii) the Illinois Constitution, which requires notice of the proceeding and an opportunity to be heard before being deprived of property, and (iii) the caselaw. A decision that limits the definition of "interest holder" under the Act constitutes an attempt to modify or, at

15

minimum, explain existing law, and obligates publication.

¶ 51    The rule has the effect of defeating the purpose and ends that dissents serve. I propose the Supreme Court consider amending Rule 23 in the same way it recently amended Rule 352. See Ill. S. Ct. Rule 352(a) (eff. July 1, 2018). Now Rule 352 requires oral argument at the request of one justice on the panel. Rule 23 also should require publication as an opinion at the request of one justice on the panel. *Snow & Ice, Inc. v. MPR Management, Inc.*, 2017 IL App (1st) 151706-U, ¶¶ 27-53 (Hyman, P.J., concurring in part and dissenting in part); *Mancini Law Group v. Schaumburg Police Department*, 2020, IL App (1st) 191131-U, ¶¶ 51-58 (Hyman, J., dissenting). A majority's ability to bury dissents (and concurrences) in the graveyard of untouchable rulings undermines the lawyer's ability to present differing interpretations and applications of law. That the majority disagrees on the worthiness of its ruling as precedent only attests to the need for amending Rule 23. Why should a majority determine the matter of a decision's precedential value, when reasonable minds differ and Supreme Court review is unavailable?

¶ 52    Appellate lawyers believe Rule 23 should be amended to allow citation of Rule 23 (b) orders as persuasive authority. See https://www.applawyers.org/blog/9057964 (last accessed November 2, 2020). Rule 23 (b) cases are available online and as easily accessible as the vastly greater number of Federal and State cases, themselves, like Rule 23(b) orders, potentially pertinent and persuasive. In a tech-research world, continuing to prohibit citation to relevant, recent, and contextually helpful local cases makes no sense.