**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 230438-U

Order filed December 28, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-23-0438 Circuit No. 19-CF-328 |
| STEVEN E. TALBOT, | ) ) ) | Honorable Carmen Julia Goodman, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE BRENNAN delivered the judgment of the court.
Justices Hettel and Davenport concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:   The court did not err in finding defendant was a threat to the safety of the community where he sold drugs leading to a drug induced homicide.

¶ 2    Defendant, Steven E. Talbot, appeals from the Will County circuit court's order granting the State's verified petition for pretrial detention, arguing the public health risk posed by the sale and ingestion of illegal drugs is not the threat to safety contemplated by section 110-6.1(a)(1) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1(a)(1) (West 2022)). We affirm.

¶ 4      In February 2019, defendant was charged in the instant case with unlawful delivery of a controlled substance (methamphetamine) (720 ILCS 570/401(d)(i) (West 2018)). Defendant's bond was initially set at $75,000 but was reduced to $30,000. Defendant posted bail and was released on the condition that he submit to drug testing. His bond was repeatedly revoked and reinstated because he failed his drug tests. In November 2019, defendant was indicted in another case with drug induced homicide (Class X) (720 ILCS 5/9-3.3(a) (West 2018)) and unlawful delivery of a controlled substance (fentanyl) (Cass 2) (720 ILCS 570/401(d) (West 2018)). His bond was set at $250,000, which was later reduced to $175,000. Defendant remained in custody.

¶ 5      On September 18, 2023, defendant filed a motion for pretrial release in both pending cases. The State filed a petition to deny pretrial release in both cases alleging defendant was charged with a felony offense other than a forcible felony for which, based on the charge or his criminal history, a sentence of imprisonment was required by law, and his release posed a real and present threat to the safety of any person, persons, or the community under section 110-6.1(a)(1) of the Code (725 ILCS 5/110-6.1(a)(1) (West 2022)).

¶ 6      The factual basis for the petition provided that the victim contacted Kiley Murphy, defendant's codefendant, to purchase narcotics. Murphy told the victim that "people have been legit dying from it. I've had to be hit with Narcan 3 times from this stuff so we've been cutting it down a little bit ourselves." Murphy also told the victim that "he" was running low. They agreed to meet at the victim's residence. Phone records showed calls between defendant and the victim. Defendant's phone pinged off cell towers in the area near the victim's residence. The victim and Murphy exchanged text messages about the bag of drugs that were delivered. The victim stopped responding, was found unconscious by her family, was transported to the hospital, and died of

fentanyl intoxication with 31 ng/mL of fentanyl in her bloodstream. A bag of white powder was found in her clothing by hospital staff. Murphy was interviewed by police and stated that she discussed the deal with the victim, but the victim handed the money to defendant, defendant possessed the drugs, and defendant handed the drugs to the victim. While defendant initially denied involvement, he ultimately admitted to being present, but stated that he was not sure if he or Murphy gave the victim the drugs. The petition also stated that defendant was on parole at the time he committed the offense, and that his criminal history included multiple convictions for possession of a controlled substance as well as convictions for delivery of a controlled substance and unlawful possession of a firearm.

¶ 7 A hearing was held on the petition on September 18, 2023. Defense counsel argued that defendant never had any contact with the victim. Moreover, counsel argued that defendant had been in custody for almost four years and no longer had any drug-related contacts. The State argued,

> "The Defendant knew overdoses were happening, which I think is important in this case as far as posing a safety threat to the community. There were several people who had overdosed on the narcotics that the Defendant was selling, which is *** what Kiley Murphy had told the victim the night that she purchased those narcotics, that they knew that people were overdosing, and so she told her to use a smaller amount because of that. He knew that people had been overdosing on these narcotics, and Kiley Murphy testified as much, and he also knew his girlfriend at the time, Kiley Muphy, had overdosed on these same narcotics that he was giving to [the victim]."

The State further noted that, even after the death of the victim, defendant continued to sell drugs to another individual. The court found that the State met its burden by clear and convincing evidence that defendant committed the offense, was a danger to the community, and there were no conditions to mitigate this. The court thus denied pretrial release.

¶ 8                                      II. ANALYSIS

¶ 9        On appeal defendant contends that the court erred in finding defendant posed a real and present threat to the safety of the community "where the public health risk posed by sales and ingestion of illegal psychoactive drugs is not in itself a 'threat to the safety' of persons or the community."

¶ 10       At the outset, we note that defendant questions the State's ability to file a petition to deny release in response to a defendant's motion for pretrial release. We have already considered this issue in *People v. Kurzeja*, 2023 IL App (3d) 230434, ¶¶ 14-15. In *Kurzeja*, we stated that defendants who were arrested prior to the implementation of bail reform

> "can either 'elect to stay in detention until such time as the previously set monetary security may be paid' (*People v. Rios*, 2023 IL App (5th) 230724, ¶ 16), or file a motion to modify. If defendant chooses the latter option, the State may file a responding petition. '[O]nce a defendant elects "to have their pretrial conditions reviewed anew" (*Rios*, 2023 IL App (5th) 230724, ¶ 16), the matter returns to the proverbial square one, where the defendant may argue for the most lenient pretrial release conditions, and the State may make competing arguments.' *People v. Jones*, 2023 IL App (4th) 230837, ¶ 23. 'This is analogous to when a change in the sentencing law occurs after a defendant has committed the offense—the defendant is given the opportunity to choose to be sentenced under that law that existed at the

4

time of the offense or the newly enacted law.' *Rios*, 2023 IL App (5th) 230724, ¶ 17." *Id.* ¶ 14.

Based on this we found that the State was permitted to file a responsive petition if defendant chose to file a motion to reopen the conditions of bail. *Id.* ¶ 15. We adopt that reasoning, here, and hold that the State was permitted to file a petition to detain in response to defendant's motion.[1]

¶ 11 Turning to the merits, when reviewing a pretrial detention decision, we consider factual findings for the manifest weight of the evidence (*People v. $280,020 in United States Currency*, 2013 IL App (1st) 111820, ¶ 18), but the ultimate decision to grant the State's petition to detain is considered for an abuse of discretion (*People v. Inman*, 2023 IL App (4th) 230864, ¶ 10). We review issues of statutory construction *de novo*. *People v. Taylor*, 2023 IL 128316, ¶ 45.

¶ 12 Everyone charged with an offense is eligible for pretrial release, which may only be denied in certain situations. 725 ILCS 5/110-2(a), 110-6.1 (West 2022). The State must file a verified petition requesting the denial of pretrial release. *Id.* § 110-6.1. The State then has the burden of proving by clear and convincing evidence (1) the proof is evident or presumption great that defendant committed a detainable offense, (2) defendant poses a real and present threat to any person, persons, or the community or is a flight risk, and (3) no conditions could mitigate this threat or risk of flight. *Id.* § 110-6.1(e). Section 110-6.1(g) states,

> "Factors to be considered in making a determination of dangerousness. The court may, in determining whether the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific

---

[1]We note that defendant has filed a motion to file a reply brief *instanter*. Based on our resolution, we find that such a reply is not necessary and deny the motion.

articulable facts of the case, consider, but shall not be limited to, evidence or testimony concerning:

(1) The nature and circumstances of any offense charged, including whether the offense is a crime of violence, involving a weapon, or a sex offense.

(2) The history and characteristics of the defendant including:

(A) Any evidence of the defendant's prior criminal history indicative of violent, abusive or assaultive behavior, or lack of such behavior. Such evidence may include testimony or documents received in juvenile proceedings, criminal, quasi-criminal, civil commitment, domestic relations, or other proceedings.

(B) Any evidence of the defendant's psychological, psychiatric or other similar social history which tends to indicate a violent, abusive, or assaultive nature, or lack of any such history.

(3) The identity of any person or persons to whose safety the defendant is believed to pose a threat, and the nature of the threat.

(4) Any statements made by, or attributed to the defendant, together with the circumstances surrounding them.

(5) The age and physical condition of the defendant.

(6) The age and physical condition of any victim or complaining witness.

(7) Whether the defendant is known to possess or have access to any weapon or weapons.

(8) Whether, at the time of the current offense or any other offense or arrest, the defendant was on probation, parole, aftercare release, mandatory supervised

6

release or other release from custody pending trial, sentencing, appeal or completion of sentence for an offense under federal or state law.

(9) Any other factors, including those listed in Section 110-5 of this Article deemed by the court to have a reasonable bearing upon the defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of such behavior." *Id.* § 110-6.1(g).

¶ 13 Here, defendant argues that the type of threat to the community he posed is not the type contemplated by the statute. We disagree. The legislature chose not to define the terms "safety" or "threat" in the statute. Instead, it gave circuit courts the ability to consider the specific facts and circumstances of the case through the lens of a nonexhaustive list of factors to determine whether a defendant was dangerous and posed a threat to any person, persons, or the community. See *id.* §§ 110-2, 110-6.1(g). While defendant notes that the offenses charged here are not enumerated in the statute, the legislature specifically included a catch all provision for defendants charged with a nonprobationable felony. See *id.* § 110-6.1(a)(1). To say that a defendant charged with a nonprobationable drug delivery offense cannot be found dangerous is belied by the instant proffer: where defendant, on pretrial release for delivery of a controlled substance, delivers an unrelated controlled substance to another person resulting in her death. We note that defendant does not argue that he was not dangerous, nor does he challenge any other portions of the court's findings. Therefore, we affirm the court's granting of the State's petition to detain.

¶ 14                                                III. CONCLUSION

¶ 15 The judgment of the circuit court of Will County is affirmed.

¶ 16 Affirmed.