2026 IL App (3d) 230139
No. 3-23-0139
Opinion filed May 7, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| THE PEOPLE *ex rel.* KWAME RAOUL, | ) | Appeal from the Circuit Court |
| Attorney General of Illinois, | ) | of the 13th Judicial Circuit, |
| | ) | Grundy County, Illinois, |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | Appeal No. 3-23-0319 |
| | ) | Circuit No. 22MX48 |
| $699,982 IN UNITED STATES CURRENCY, | ) | |
| | ) | |
| Defendant | ) | Honorable |
| | ) | Gary Dobbs, |
| (Arslan Tariq, Claimant- | ) | Judge, Presiding. |
| Appellee). | ) | |

_____

JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.
Justices Davenport and Bertani concurred in the judgment and opinion.

_____

**OPINION**

¶ 1        The State filed a verified civil complaint for the forfeiture of $699,982 in United States currency seized by police during a traffic stop, alleging that the currency was subject to forfeiture under section 29B-5 of the Criminal Code of 2012 (Code) (720 ILCS 5/29B-5 (West 2022)). Arslan Tariq filed a claim asserting ownership of the currency and a motion to dismiss the State's forfeiture complaint. After conducting a hearing, the trial court granted Tariq's motion to dismiss. The State appeals.

## I. BACKGROUND

On April 6, 2022, Illinois State Trooper Patrick Mahoney was on duty on Interstate 80 near Morris. While parked alongside the highway, Mahoney saw a white Chrysler minivan that he believed was speeding. He did not know how fast it was traveling. Mahoney drove onto the highway and followed the minivan. He caught up with it approximately two miles down the road and pulled it over.

Mahoney exited his squad car and approached the minivan. There were two people in the minivan—a driver and a passenger seated in the back seat. The driver was identified as Sultan Peerzada. Tariq was sitting in the rear passenger seat. Peerzada gave Officer Mahoney a New York driver's license and a rental car receipt. Mahoney ran the minivan's Pennsylvania license plate through Illinois's law enforcement agencies data system and discovered that the plate was registered to a different vehicle.

At that point, a police sergeant arrived at the scene. When the sergeant asked if he could see the car rental agreement, he noticed that Peerzada's hands were shaking as he handed it over. According to the rental agreement, the minivan had been rented in Elmhurst, New York, one day earlier and was due to be returned the following week. Peerzada and Tariq said they were headed to a bachelor party in Las Vegas without their wives' knowledge.

During a nonconsensual search of the vehicle, the troopers found hundreds of thousands of dollars in a storage compartment next to where Tariq was sitting. Tariq claimed ownership of the money. He told the police officers that he had earned the money through his business, and he showed the troopers documentation of various bank accounts reflecting large transactions to and from the accounts.

¶ 7    While the sergeant was bringing the rental agreement to the trooper, he noticed a K-9 unit parked in the median, so he signaled for the unit to conduct a drug sniff. The dog alerted at the back door of the minivan.

¶ 8    Peerzada and Tariq were handcuffed and taken to the Illinois State Police district headquarters. On the way, Tariq waived his *Miranda* rights (see *Miranda v. Arizona*, 384 U.S. 436 (1966)) and said he owned his own business and worked for an electronics company. He stated that he could provide documentation and explanations for the cash when they got to the station.

¶ 9    At the station, Tariq was again advised of his *Miranda* rights and again waived his rights. He said he brought the cash found in the minivan (which he estimated to be about $700,000) because it was easier to use than a credit card. He claimed that he had earned the cash by selling iPhones, iPads, AirPods, and shoes in the United States and abroad. He said that many of his buyers either paid him by wire transfers or met him in person and paid in cash. He maintained that he had earned approximately $80,000 in 2019, $80,000 in 2020, and $1.2 million in 2021.

¶ 10    Tariq provided bank records for a business account and a personal account. The records showed many large wire transfers and checks, both incoming and outgoing, but no large cash withdrawals. Tariq said he had never deposited the $700,000 because he was afraid that, if he subsequently withdrew it, he would be unable to get a loan to buy a house.

¶ 11    The canine unit was brought to police headquarters. The dog alerted to the cash from the minivan. The money was transferred to a bank, where it was counted and found to total $699,982.

¶ 12　　　　　　　On April 26, 2022, the State filed a petition for a preliminary hearing to determine whether there was probable cause that the money seized by the Illinois State Police was subject to forfeiture under the Illinois money laundering statute. The trial court found probable cause and authorized the State to proceed with a forfeiture action.

¶ 13　　　　　　　Three days later, the State filed a verified forfeiture complaint pursuant to section 29B-5 of the Code, thereby initiating a civil forfeiture proceeding *in rem.* The complaint alleged that the nearly $700,000 in cash found near Tariq was criminally derived property subject to forfeiture under the money laundering statute because it constituted or was derived from proceeds traceable to the commission of one of several felonies, including tax evasion, drug trafficking, or bulk cash smuggling. The State supported these allegations by noting that the unusually large amount of cash at issue was being transported to Las Vegas in an unusual manner (in a bag via rented minivan) with no indicia of its legitimate origin.

¶ 14　　　　　　　On May 17, 2022, Tariq filed a verified claim asserting an ownership interest in the currency seized by the State and asking the court to order the currency returned to him. Tariq contended that he had obtained the money through legitimate business dealings and that the cash at issue was seized in violation of United States Constitution and the Illinois Constitution.

¶ 15　　　　　　　On June 17, 2022, Tariq filed a motion to suppress the evidence obtained from the search of the minivan and two motions to dismiss the State's complaint. In his motion to suppress, Tariq argued that there was no basis to stop the minivan, no probable cause to search the minivan, and the traffic stop was improperly prolonged to allow the K-9 drug sniff. In the first of Tariq's motions to dismiss, he argued that the currency at issue could not be shown to constitute or be derived from proceeds traceable to a felony offense under section 29B-5 of the Code. In the second motion to dismiss, Tariq argued that the seizure of the currency constituted

4

an excessive fine under the eighth amendment to the United States Constitution. See U.S. Const., amend. VIII

¶ 16 On July 11, 2022, Tariq filed an answer to the State's forfeiture complaint.

¶ 17 On July 15, 2022, the State filed a motion for default judgment, arguing that Tariq's verified clam and answer failed to satisfy the mandatory pleading requirements prescribed in section 29B-13(6) of the Code. 720 ILCS 5/29B-13(6) (West 2022).

¶ 18 That same day, the State filed a motion requesting that the court hold a preliminary hearing pursuant to section 29B-13(5) of the money laundering statute to determine whether Tariq could prove by a preponderance of the evidence that he has a "lawful, legitimate ownership interest in the property and that it was obtained through a lawful source." *Id.* § 29B-13(5).

¶ 19 On August 9, 2022, Tariq filed a response to the State's motion for default judgment with an affidavit purporting to satisfy the statutory pleading requirements. In the affidavit, Tariq stated that the currency at issue is legitimate income earned from selling cellular telephones and that he had provided bank records and receipts illustrating the source of his income. The affidavit also referenced the bank records Tariq had shown to law enforcement. Tariq informed the trial court that he had filed two motions to dismiss and a motion to suppress, and he stated that rulings favorable to him on one or more of those motions could be dispositive of the case. Accordingly, he maintained that the court should rule on those motions before the case proceeded further.

¶ 20 On September 13, 2022, the State appeared in court and entered an agreed order setting Tariq's motion to suppress for hearing. On October 19 and 20, 2022, pursuant to agreement and without any objection by the State, the court conducted an evidentiary hearing on

5

Tariq's motion to suppress. The trial court granted Tariq's motion to suppress on November 9, 2022. The court found that Mahoney's testimony lacked credibility and that the traffic stop was pretextual and was based on a "mere hunch" rather than a reasonable, articulable suspicion of criminal activity.

¶ 21 After the trial court granted Tariq's motion to suppress, the State propounded discovery requests upon Tariq.

¶ 22 On December 1, 2022, Tariq filed a new motion to dismiss, arguing that, because the court had suppressed the evidence seized pursuant to the traffic stop, the State could no longer support its complaint for forfeiture. The parties filed briefs and presented oral argument on that motion at a hearing on February 16, 2023.

¶ 23 On March 10, 2023, the trial court granted one of Tariq's initial motions to dismiss because it found that there was no nexus between Tariq's possession of the money and any criminal act. In its ruling, the trial court found that Tariq had the right to proceed as a claimant in the case because the currency was found in close proximity to him and "at all times, he claimed the money as his own."

¶ 24 The State appealed the dismissal.

¶ 25 II. ANALYSIS

¶ 26 The State argues that the trial court erred in dismissing the State's forfeiture complaint for two reasons. First, the State maintains that Tariq's answer to the State's complaint did not satisfy the pleading requirements of section 29B-13(6) of the Code. Second, the State contends that the trial court violated section 29B-13(5) of the statute by ruling for Tariq before conducting a preliminary hearing to determine whether Tariq could prove by a preponderance of the evidence that he had a "lawful, legitimate ownership interest in the property and that it was

6

obtained through a lawful source." *Id.* We will address only the second argument because we find it to be dispositive of this appeal.

¶ 27 Section 29B-5 of the Code provides that property related to the commission of money laundering offenses may be subject to forfeiture. *Id.* § 29B-5. The statute states, in pertinent part, that a person's property is subject to forfeiture if (1) it "constitut[es], [is] derived from, or [is] traceable to any proceeds the person obtained, directly or indirectly, as a result of a violation of [the money laundering statute]," or (2) it "[is] used, or [is] intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of [article 29B of the Code]." *Id.* § 29B-5(1)-(2). A police officer may seize property without a warrant if there is probable cause to believe that the property is subject to forfeiture under the statute and "the property is seized under circumstances in which a warrantless seizure or arrest would be reasonable." *Id.* § 29B-6(a)(4).

¶ 28 Within 28 days of the seizure, the state's attorney may institute judicial forfeiture proceedings *in rem* by filing a verified complaint for forfeiture against the seized property. The complaint must be served upon the person from whom the property was seized and all persons known or reasonably believed by the State to claim an interest in the property. *Id.* § 29B-13(3).

¶ 29 Within 45 days of service, an owner or interest holder in the property may file an answer asserting a claim against the property in the action *in rem. Id.* § 29B-13(7). The answer must be signed under penalty of perjury and must satisfy the pleading requirements prescribed in section 29B-13(6). *Id.* § 29B-13(6). Only an owner or interest holder in the property may file an answer asserting a claim against the property. *Id.* § 29B-13(5). "Upon motion of the State, the court shall first hold a hearing, in which a claimant shall establish by a preponderance of the

7

evidence, that he or she has a lawful, legitimate ownership interest in the property and that it was obtained through a lawful source." *Id.*

¶ 30 At the judicial *in rem* proceeding, in the State's case in chief, the State must show by a preponderance of the evidence that the property is subject to forfeiture. *Id.* § 29B-13(9). If the State makes such a showing, the claimant then has the burden of production to set forth evidence that the property is not related to the alleged factual basis of the forfeiture. *Id.* "After this production of evidence, the State shall maintain the burden of proof to overcome this assertion." *Id.* A claimant shall provide the State notice of its intent to allege that the currency or its equivalent is not related to the alleged factual basis of the forfeiture and state the reasons why. *Id.*

¶ 31 If the State does not meet its burden to show that the property is subject to forfeiture, the court shall order the interest in the property returned or conveyed to the claimant and shall order all other property forfeited to the State. *Id.* § 29B-13(10). If the State does meet its burden to show that the property is subject to forfeiture, the court shall order all property forfeited to the State. *Id.*

¶ 32 In this case, the State argues that the trial court erred by dismissing the State's complaint before conducting a hearing to determine whether Tariq had a lawful and legitimate interest in the seized currency, as required by section 29B-13(5). *Id.* § 29B-13(5). The resolution of this issue requires us to construe section 29B-13(5) and other provisions of article 29B of the Code. Statutory interpretation presents a question of law, which we review *de novo*. *People ex rel. Glasgow v. 2017 Ford Explorer*, 2022 IL App (3d) 210368, ¶ 19. The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature by first looking at the plain language of the statute. *Davis v. Toshiba Machine Co., America*, 186 Ill. 2d

8

181, 184 (1999). No rule of statutory construction allows the court to declare that the legislature did not mean what the plain language of the statute imports. *People v. Woodard*, 175 Ill. 2d 435, 443 (1997). Where the language of a statute is clear and unambiguous, a court must give it effect as written without reading into it exceptions, limitations, or conditions that the legislature did not express. *Id.*

¶ 33     As noted above, section 29B-13(5) provides that "[o]nly an owner of or interest holder in the property" may answer the State's complaint and participate as a claimant in an *in rem* forfeiture proceeding. *Id.* § 29B-13(5). It further provides that, upon motion of the State, "the court shall first hold a hearing, in which a claimant shall establish by a preponderance of the evidence, that he or she has a lawful, legitimate ownership interest in the property and that it was obtained through a lawful source." *Id.* After Tariq answered the State's forfeiture complaint and filed a claim asserting ownership of the seized currency, the State filed a written motion requesting a hearing under section 29B-13(5). The court never conducted such a hearing. Instead, it proceeded to address the merits of Tariq's motions to dismiss, found that Tariq had the right to proceed as a claimant, and dismissed the State's complaint. Accordingly, the court allowed Tariq to proceed as a claimant without requiring him to prove by a preponderance of the evidence that he actually owned the property and had obtained it through a lawful source. That violated the plain terms of section 29B-13(5). See *id.*

¶ 34     Tariq argues that the State abandoned its request for a preliminary hearing under section 29B-13(5) because it failed to obtain a ruling on that issue before it agreed to conduct an evidentiary hearing on Tariq's motion to suppress and before it litigated the issues presented in Tariq's motions to suppress and dismiss. Tariq maintains that, because the State opted to litigate the claimant's motions before a hearing was conducted under section 29B-13(5), the State

9

conceded that the claimant had a lawful and legitimate interest in the currency and had standing to file a claim in the *in rem* proceeding.

¶ 35    A party filing a motion is responsible for obtaining a ruling from the trial court on the motion. *People v. Brusaw*, 2023 IL 128474, ¶ 17. If no ruling is obtained, the motion is presumed to have been abandoned or waived by the movant, "unless circumstances indicate otherwise." *Id.* The circumstances in this case indicate that the State did not abandon the substance of its section 29B-13(5) motion. The State filed its motion shortly after Tariq filed his answer, claim, and motion to suppress. This triggered the statutory requirement that Tariq prove a legitimate and lawful ownership interest in the currency by a preponderance of the evidence. 720 ILCS 5/29B-13(5) (West 2022). The State attempted to hold Tariq to this burden throughout the litigation. After the trial court granted Tariq's motion to suppress, Tariq moved to dismiss the State's forfeiture complaint based on that ruling. In its memorandum in opposition to Tariq's motion, the State cited section 29B-13(5) for the proposition that "[Tariq's] right to possession of the money at issue now requires him to demonstrate his lawful interest therein." Then, during the ensuing hearing on Tariq's motion to dismiss, the State argued that that "the issue before this Court *** is whether or not [Tariq] can establish lawful possession of this property."

¶ 36    Thus, although the State arguably waived its right to obtain a section 29B-13(5) hearing before any further proceedings were conducted, it never abandoned its argument that Tariq could not establish a right to the property without satisfying his burden under section 29B-13(5). On the contrary, the State continually maintained that section 29B-13(5) required Tariq to prove that he had a lawful, legitimate ownership interest in the property.

¶ 37    The trial court failed to hold Tariq to his burden under section 29B-13(5). See *id.* Instead, it held that Tariq had a right to proceed as claimant because "[t]he money was found in

10

his close proximity" and "at all times he claimed the money as his own." That is not the legal standard prescribed by section 29B-13(5). See *id.* As noted, section 29B-13(5) provides that a person may not proceed as a claimant unless he establishes by a preponderance of the evidence that he has a "lawful, legitimate ownership interest in the property and that it was obtained through a lawful source." *Id.* A claimant cannot satisfy this burden merely by asserting that he owns the property. Neither does the statute include an exception for property seized in close proximity to the claimant. Thus, a would-be claimant cannot satisfy his burden under section 29B-13(5) (and thereby obtain the right to proceed as a claimant in the *in rem* proceedings) merely by claiming ownership of property that was seized in his proximity. The trial court erred by granting Tariq's motion to dismiss without holding a hearing under section 29B-13(5) or otherwise holding Tariq to his burden under that section.

¶ 38        During oral argument in this appeal, Tariq argued that the State's interpretation of section 29B-13(5) would impermissibly shift the burden of proof in an *in rem* forfeiture proceeding from the State to the would-be claimant. As Tariq correctly notes, section 29B-13(9) of the Code provides that the State carries the burden to prove that the seized property is "subject to forfeiture," *i.e.*, that it is connected to unlawful money laundering activities in one or more specified respects. See 720 ILCS 5/29B-13(9) (West 2022); see also *id.* § 29B-5(1), (2). However, section 29B-13(5) requires the *party asserting an ownership interest* in the property to prove by a preponderance of the evidence that he has a "lawful" and legitimate interest in the property, and that he obtained the property "through a lawful source." *Id.* § 29B-13(5). Tariq argues that this requires the would-be claimant to prove that the seized property is *not* connected to money laundering, which would relieve the State of its burden to prove that the property *is* connected to money laundering.

11

¶ 39        We disagree. Although the statutory scheme is not a model of clarity, we believe that section 29B-13(5) may be read in a manner that does not impermissibly shift the burden of proof on the ultimate issue in a forfeiture proceeding. Currency or other property may be connected to money laundering, and therefore subject to forfeiture, if it is "used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of [article 29B of the Code]." *Id.* § 29B-5(2). Currency could be used in this manner even if it was obtained through a lawful source. For example, the revenues of a legitimate business transaction may be commingled with criminally derived funds in an effort to conceal the source of the illegal funds. If the owner of lawfully obtained funds uses, *or intends to use*, the funds for that purpose (or in any other manner that would commit or facilitate the commission of a violation of article 29B of the Code), the property is subject to forfeiture. The State bears the burden of proving that the lawfully obtained funds were used or intended to be used for such an unlawful purpose, rendering them subject to forfeiture.

¶ 40        Section 29B-13(5) does not relieve the State of that burden. Rather, it merely requires a would-be claimant to prove that he has a legitimate and lawful ownership interest in the currency at issue (*i.e.*, that he owns and has lawfully obtained the currency). If the State contests the would-be claimant's ownership of the currency, and the would-be claimant cannot prove he is the lawful owner, he may not file a claim and participate in the *in rem* proceedings. In other words, section 29B-13(5) requires a person asserting an ownership interest in seized currency to prove that he has standing to file a claim for the currency. It does not require him to prove that his lawfully obtained currency was not used or intended to be used to commit or facilitate money laundering. The State bears the burden of proof on that issue at all times.

¶ 41                                III. CONCLUSION

12

¶ 42 For the foregoing reasons, we reverse the trial court's dismissal of the State's forfeiture complaint and remand the matter and direct the trial court to determine whether Tariq can meet his burden under section 29B-13(5) to prove that he has a lawful and legitimate ownership interest in the seized currency and that the currency was obtained through a lawful source.

¶ 43 Reversed; cause remanded with directions.

*People ex rel. Raoul v. $699,982 United States Currency*, 2026 IL App (3d) 230139

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Grundy County, No. 22-MX-48; the Hon. Gary Dobbs, Judge, presiding. |
| **Attorneys for Appellant:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Katherine M. Doersch and Garson S. Fischer, Assistant Attorneys General, of counsel), for the People. |
| **Attorneys for Appellee:** | Jordan M. Kielian and Ryan Wharrie, of The Wharrie Law Firm, P.C., of Coal City, for appellee. |