**2022 IL 126927**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 126927)

THE PEOPLE OF THE STATE OF ILLINOIS *ex rel.* ANITA ALVAREZ, Appellee,
v. $59,914 UNITED STATES CURRENCY *et al*.
(Ameen Salaam, Appellant).

*Opinion filed April 21, 2022.*

JUSTICE MICHAEL J. BURKE delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Garman, Theis, Overstreet, and Carter concurred in the judgment and opinion.

Justice Neville dissented, with opinion.

## OPINION

¶ 1    Pursuant to the Drug Asset Forfeiture Procedure Act (Forfeiture Act) (725 ILCS 150/1 *et seq.* (West 2014)), the State initiated forfeiture proceedings against United

States currency totaling $223,743. The currency was seized from a van driven by Allen Tyler, but owned by appellant Ameen Salaam, following a traffic stop. The forfeiture complaint alleged that there was probable cause to believe that the currency was furnished or intended to be furnished in exchange for a controlled substance. The State unsuccessfully attempted to serve Tyler with notice of the forfeiture proceedings by mail, before serving notice by publication (*id.* § 4). No one filed a claim to the currency, so the circuit court of Cook County entered a default judgment of forfeiture.

¶ 2        More than two years after the judgment of forfeiture was entered, Salaam filed a motion to vacate the judgment, arguing that the judgment was void because he was not served with notice of the forfeiture proceedings. The circuit court denied the motion, finding that it had *in rem* jurisdiction over the currency; that notice was properly given to the driver of the van, who was the "owner or interest holder" of the currency; and that Salaam was not entitled to notice because he was not an "owner or interest holder" of the currency under the Forfeiture Act.

¶ 3        Salaam appealed, and the appellate court affirmed, finding, *inter alia*, that the State complied with the notice requirements by serving notice on the driver of the van as " 'owner or interest holder' " of the money. 2020 IL App (1st) 190922-U, ¶ 18. This court allowed Salaam's subsequent petition for leave to appeal to this court. Ill. S. Ct. R. 315 (eff. Oct. 1, 2020).

¶ 4                                      I. BACKGROUND

¶ 5        On September 15, 2015, Chicago police officers initiated a traffic stop of a white utility van that did not have a rear vehicle registration light. Tyler, the driver of the van, failed to provide a valid driver's license or proof of insurance. Tyler received a citation for "rear plate not being visible." During the traffic stop, the officers smelled a strong odor of cannabis emanating from a large, soft-sided bag on the passenger seat of the van. The bag was pulled closed but was unzipped. Upon searching the bag, the officers discovered a plastic bag containing suspect cannabis and two clear knotted bags containing suspect cocaine, along with five bundles of United States currency in ziplocked and plastic bags.

¶ 6    The officers arrested Tyler and seized the van, along with the bag, the drugs, and the currency. In all, the police seized 120 grams of cannabis, 84 grams of cocaine, and five bags containing currency in the following amounts: (1) $59,914; (2) $53,140; (3) $67,109; (4) $7000; and (5) $36,580, for a total of $223,743. At the time of his arrest, Tyler provided the following home address: 9135 South Blackstone Avenue, Chicago, Illinois 60619. According to records of the Secretary of State, the van was a work van registered to Ameen Salaam "dba Infinite Heating, Cooling [and Refrigeration]" at 1920 North Springfield Avenue, Chicago, Illinois, 60647.[1]

¶ 7    On November 12, 2015, the State filed an *in rem* forfeiture complaint against the $223,743 pursuant to the Cannabis Control Act (720 ILCS 550/12 (West 2014)), and section 7(1) of the Forfeiture Act (725 ILCS 150/7(1) (West 2014)), which presumes money found in "close proximity to forfeitable substances" is also forfeitable as money intended for the purchase of controlled substances or as proceeds of the sale of controlled substances. On the same day, the State served statutory notice of the forfeiture proceedings to Tyler by certified mail, return receipt requested, and regular mail, at 9135 South Blackstone Avenue, the address Tyler provided at the time of his arrest. Both the certified mail and the regular mail were returned as undeliverable. Consequently, on November 18, 2015, November 25, 2015, and December 2, 2015, the State published notice of the impending forfeiture proceedings in the Chicago Daily Law Bulletin directed to "Allen Tyler and any other unknown owner." No one asserting an interest in the currency subject to forfeiture filed an appearance or an answer in the forfeiture proceedings. See *id.* § 9(E). On January 20, 2016, the circuit court entered an *ex parte* judgment of forfeiture.

¶ 8    On November 2, 2018, more than two years after the circuit court entered the judgment of forfeiture, Salaam filed a motion to vacate the default judgment of forfeiture and to dismiss the forfeiture complaint. Salaam argued that the court's

---

[1]Tyler was charged with the manufacture and delivery of a controlled substance in connection with the September 2015 arrest and seizure. While released on bond for those charges, Tyler and Salaam were arrested by federal agents and were jointly charged in federal court with possession of more than five kilograms of cocaine, with intent to distribute. Tyler and Salaam pled guilty to distributing cocaine and were sentenced to terms of 50 months and 60 months, respectively. After judgment was entered on Tyler's federal prosecution, the State dismissed the charges stemming from the September 2015 arrest in this case.

forfeiture order was issued without jurisdiction because the State failed to serve him with notice of the forfeiture proceedings. Salaam maintained that, as the owner of the vehicle from which the currency was seized, he was an "interest holder" of the currency and, thus, was entitled to notice of the forfeiture proceedings. Salaam argued that the forfeiture judgment was void because he did not receive statutory notice.

¶ 9    In response, the State moved to strike Salaam's motion, arguing that it was untimely filed pursuant to section 2-1401(c) of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401(c) (West 2016)) because it was filed more than two years after the forfeiture order was entered. The State also argued that the motion could not be litigated because the forfeited currency had already been disbursed, so that the *res* no longer existed. In addition, the State asserted that it had complied with all notice requirements under the Forfeiture Act.

¶ 10    On April 3, 2019, the circuit court entered an order denying Salaam's motion to vacate, finding it had *in rem* jurisdiction over the seized currency. The circuit court also found that Salaam was not entitled to notice under the Forfeiture Act because he was not the "owner or interest holder" of the money. Instead, the circuit court found that Tyler was the "owner or interest holder" of the money, as the drugs and money were found in close proximity to Tyler, and the State had properly served Tyler with notice of the forfeiture proceedings. The circuit court did not address the timeliness of Salaam's motion.

¶ 11    Salaam appealed, arguing that the trial court erred in denying his motion to vacate. Salaam contended that the failure to serve statutory notice of the judicial forfeiture proceedings upon him, as an "interest holder" of the money, violated his due process rights and rendered the forfeiture order void. The Appellate Court, First District, with one justice dissenting, affirmed the circuit court's order denying Salaam's motion to vacate the default forfeiture judgment and to dismiss the forfeiture complaint. 2020 IL App (1st) 190922-U, ¶ 25. Specifically, the appellate court found that Salaam was not entitled to notice and that the State complied with the Forfeiture Act when it served notice on Tyler because Tyler was the "owner or interest holder" of the money. *Id.* ¶ 18. In reaching this conclusion, the appellate court highlighted the following facts: (1) the drugs and money were seized from a bag that was " 'pulled closed' " on the passenger seat of the van in close proximity

to Tyler, who exercised "exclusive dominion and control over the bag"; (2) Salaam was not inside the van at the time of Tyler's arrest and did not "exercise immediate dominion or control over the bag"; and (3) there was no evidence in the record to establish that Salaam's name or his company's name was on the bag, which was not concealed or locked inside a compartment of the van. *Id.* ¶ 17.

¶ 12    The appellate court also found that, even if Salaam were entitled to notice, he had "actual notice of the forfeiture proceedings." *Id.* ¶ 19. The appellate court noted Salaam's ongoing relationship with Tyler and reasoned that Tyler would have notified Salaam that $223,743 had been seized from his work van.[2] *Id.* ¶ 20.

¶ 13    The dissenting justice reasoned that Salaam was entitled to notice of the forfeiture proceedings because he was the owner of the van in which the money was found and, therefore, "might have a legally recognized interest" in the money. *Id.* ¶ 38 (Hyman, J., dissenting). He further reasoned that the State's failure to serve notice on Salaam rendered the forfeiture judgment void. *Id.* ¶ 46.

¶ 14    II. ANALYSIS

¶ 15    In this court, Salaam again argues that the State's failure to give him notice of the forfeiture proceeding denied him due process and rendered the forfeiture judgment void for lack of jurisdiction. Initially, we note that Salaam's motion, labeled a "motion to vacate," was filed more than 30 days after the circuit court's final judgment was entered. In reviewing the content of the "motion to vacate," we find the motion was in effect a petition for relief from judgment pursuant to section 2-1401 of the Code. 735 ILCS 5/2-1401 (West 2016); see *In re Haley D.*, 2011 IL 110886, ¶ 67 (the character of the pleading should be determined from its content, not its label); see also *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 102 (2002) (the caption of a motion is not controlling; the character of the pleading is determined from its content, not its label (citing *Barnes v. Southern Ry. Co.*, 116

---

[2]The appellate court noted that Salaam's attorney during his appeal before the appellate court was the same attorney who represented Salaam in the unrelated federal criminal case, as well as the attorney who defended Tyler in the state criminal charges in the present case, and " 'step[ped] up on behalf' " of Tyler in his initial appearance in the federal proceedings. 2020 IL App (1st) 190922-U, ¶ 20.

Ill. 2d 236 (1987))). We therefore will review Salaam's motion to vacate as a section 2-1401 petition.

¶ 16        Generally, to be entitled to relief under section 2-1401 of the Code, the petition must be filed within two years of the judgment or order, the petitioner must allege a meritorious defense to the original action, and the petitioner must show that the petition was brought with due diligence. *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 221-22 (1986); see 735 ILCS 5/2-1401 (West 2016). However, when a section 2-1401 petition alleges that a judgment is void, the petition "need not be brought within the two-year time limitation," and "the allegation that the judgment or order is void substitutes for and negates the need to allege a meritorious defense and due diligence." *Sarkissian*, 201 Ill. 2d at 104; see also *People v. Castleberry*, 2015 IL 116916, ¶ 15 (" 'Under Illinois law, a party may challenge a judgment as being void at any time, either directly or collaterally, and the challenge is not subject to forfeiture or other procedural restraints.' " (quoting *LVNV Funding, LLC v. Trice*, 2015 IL 116129, ¶ 38)).

¶ 17        Salaam argues that, due to the State's failure to provide him with notice as required by the Forfeiture Act, his due process rights were violated, and the circuit court was divested of personal jurisdiction, rendering the forfeiture judgment void. The State responds that the lack of notice to Salaam rendered the forfeiture judgment voidable because a forfeiture proceeding is an *in rem* proceeding, which does not require personal jurisdiction, and the circuit court must only acquire jurisdiction over the *res*—the money. Moreover, the State responds that it properly complied with the statutory notice requirement by serving notice upon Tyler, who was the "owner or interest holder."

¶ 18        The lower courts did not address whether the forfeiture order was void or voidable, focusing instead on whether Salaam was entitled to notice of the forfeiture. We find, however, that any analysis of Salaam's motion must begin with an examination of whether the forfeiture order was void or voidable, because the timeliness of Salaam's motion turns on the answer to that question. Whether a judgment is void is a question of law that this court will review *de novo*. *Medponics Illinois, LLC v. Department of Agriculture*, 2021 IL 125443, ¶ 29. Where jurisdiction is lacking, any resulting judgment is rendered void and may be attacked at any time, either directly or indirectly. *People v. Davis*, 156 Ill. 2d 149, 155

(1993). In contrast, a voidable judgment is "one entered erroneously by a court having jurisdiction and is not subject to collateral attack." *Id.* at 155-56. The failure to comply with a statutory requirement or prerequisite cannot deprive a circuit court of subject-matter jurisdiction because jurisdiction is conferred entirely by our state constitution. *Castleberry*, 2015 IL 116916, ¶ 15.

¶ 19     Jurisdiction is most commonly understood as consisting of subject-matter jurisdiction and personal jurisdiction. *Id.* ¶ 12. Subject-matter jurisdiction refers to a court's power to "hear and determine cases of the general class to which the proceeding in question belongs." *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 334 (2002). "Personal jurisdiction refers to the court's power ' "to bring a person into its adjudicative process." ' " *Castleberry*, 2015 IL 116916, ¶ 12 (quoting *In re M.W.*, 232 Ill. 2d 408, 415 (2009), quoting Black's Law Dictionary 870 (8th ed. 2004)). With respect to specific property, however, a court has *in rem* jurisdiction rather than personal jurisdiction. *In rem* jurisdiction refers to a court's power to adjudicate the rights to that property, including the power to seize and hold the property. *ABN AMRO Mortgage Group, Inc. v. McGahan*, 237 Ill. 2d 526, 532 (2010). An *in rem* action " 'treats property, therefore, as the defendant, susceptible of being tried and condemned, while the owner merely gets notice, along with the rest of the world, and may appear for his property or not.' " *Id.* at 532-33 (quoting Rufus Waples, A Treatise on Proceedings in Rem § 1, at 2 (1882)). The Forfeiture Act provides for a judicial *in rem* procedure if the State seizes real property. 725 ILCS 150/9 (West 2014).

¶ 20     Here, there was subject-matter jurisdiction, because the circuit court had the power to hear and determine cases under the Forfeiture Act. The circuit court also had *in rem* jurisdiction over the currency, based upon the State's seizure of the currency and filing of a forfeiture action under the Forfeiture Act. It follows, then, that once the circuit court obtained jurisdiction over the currency in this case, any purportedly erroneous judgment entered with regard to that currency would render the circuit court's judgment voidable, not void.

¶ 21     Salaam argues, however, that personal jurisdiction was lacking in this case, because the State failed to provide him with the minimal notice required by statute to satisfy due process. According to Salaam, the lack of personal jurisdiction rendered the circuit court's judgment void.

¶ 22 This is incorrect. As discussed, the circuit court had *in rem* jurisdiction with respect to the forfeiture proceeding. Personal jurisdiction over Salaam was not required with respect to the underlying *in rem* proceedings, and any failure to provide Salaam with statutory notice did not render the forfeiture order void for lack of jurisdiction.

¶ 23 Salaam's challenge to the lack of notice could be raised in a section 2-1401 petition, but the lack of notice, even if that lack of notice amounted to a due process violation, could not deprive the circuit court of its jurisdiction. Once the circuit court acquired jurisdiction, errors concerning notice could only render the circuit court's order voidable, not void. Salaam's section 2-1401 petition, then, had to be filed within two years of the forfeiture order. See 735 ILCS 5/2-1401(c) (West 2016). Because Salaam's motion to vacate was not filed within two years of the circuit court's forfeiture order, the motion was untimely.

¶ 24 As discussed, the trial court denied Salaam's motion to vacate on the basis that Salaam was not entitled to notice under the Forfeiture Act. In affirming the trial court, the appellate court likewise found that Salaam was not entitled to notice and that the State had complied with the Forfeiture Act when it served notice on Tyler. We are not bound by the reasoning of the lower courts, however, and may affirm on any basis presented in the record. See *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 222 Ill. 2d 218, 258 (2006) (this court may affirm the appellate court on any basis presented in the record); *In re B.L.S.*, 202 Ill. 2d 510, 520 (2002) (this court may affirm the trial court on any basis in the record). We find that any challenges to the circuit court's forfeiture order rendered that order potentially voidable, so that Salaam had to file any petition for relief within two years of the circuit court's order. Because Salaam did not file his petition within two years of the circuit court's order, his petition was untimely and was properly denied. For those reasons, we affirm the orders of the lower courts.

¶ 25                                          III. CONCLUSION

¶ 26 The circuit court in this case had subject matter jurisdiction of the instant case under the Forfeiture Act, and had *in rem* jurisdiction over the seized currency. Therefore, any failure to comply with statutory notice rendered the trial court's judgment voidable, not void, so that any challenge to the circuit court's order had

to be filed within two years of the entry of that order. Because Salaam failed to file his motion to vacate within two years of the circuit court's forfeiture order, the motion was not timely and was properly dismissed. The judgment of the appellate court, which affirmed the judgment of the circuit court denying Salaam's motion to vacate, is affirmed.

¶ 27     Judgments affirmed.

¶ 28     JUSTICE NEVILLE, dissenting:

¶ 29     The issue before this court is whether the forfeiture judgment is void for lack of jurisdiction because the State failed to give Salaam notice of the forfeiture proceedings. The majority holds that, because the circuit court had subject-matter jurisdiction over the cause of action and *in rem* jurisdiction over the currency, "any purportedly erroneous judgment entered with regard to that currency would render the circuit court's judgment voidable, not void." *Supra* ¶ 20. Specifically, the majority holds that any failure to provide Salaam with notice, "even if that lack of notice amounted to a due process violation, could not deprive the circuit court of its jurisdiction." *Supra* ¶ 23. Consequently, without deciding whether Salaam was entitled to notice, the majority affirms the judgment of the appellate court finding that, because the circuit court's order was voidable and Salaam's section 2-1401 petition was untimely, the petition was properly dismissed. *Supra* ¶ 24.

¶ 30     I disagree with the majority's holding that the forfeiture judgment was voidable. Instead, I would hold that Salaam, as the owner or interest holder of the currency that was seized or taken by the State, was entitled to notice of the forfeiture proceedings pursuant to (1) article I, section 2, of our constitution (Ill. Const. 1970, art. I, § 2), (2) the fourteenth amendment of the United States Constitution (U.S. Const., amend. XIV), and (3) section 4 of the Forfeiture Act (725 ILCS 150/4 (West 2014)). Moreover, the State's failure to provide him with notice violated his due process rights, prevented the circuit court from exercising *in rem* jurisdiction, and rendered the forfeiture judgment void. Therefore, I respectfully dissent.

¶ 31                                    I. ANALYSIS

¶ 32                                 A. Void Judgments

¶ 33        The question of whether a judgment is void or voidable depends on whether the court entering the challenged order possessed jurisdiction over the parties and the subject matter. See *People v. Davis*, 156 Ill. 2d 149, 155 (1993). If jurisdiction is lacking, any subsequent judgment of the court is void and may be attacked collaterally at any time. *Id.* In *in personam* actions, jurisdiction is composed of two elements: subject-matter jurisdiction and personal jurisdiction. *In re M.W.*, 232 Ill. 2d 408, 414 (2009). But I would find in *in rem* proceedings, which are *sui generis* (unique or special) proceedings, that jurisdiction is composed of subject-matter jurisdiction over the property or *res* and notice to all owners of the property, along with the world. See *ABN AMRO Mortgage Group, Inc. v. McGahan*, 237 Ill. 2d 526, 532-33, 535-37 (2010). The *McGahan* court noted that *in rem* proceedings must include a procedure designed to give notice to the world since the property, rather than the person with an interest in the property, is the defendant. *Id.* at 532, 536-37; see also *Village of Algonquin v. Lowe*, 2011 IL App (2d) 100603, ¶ 19 (at the heart of *in rem* jurisdiction is the fiction that *the property* is the defendant).

¶ 34        This court has held that only the most fundamental defect—a lack of personal jurisdiction or a lack of subject-matter jurisdiction—warrants declaring a judgment void. *People v. Castleberry*, 2015 IL 116916, ¶ 15. However, I would hold that, in *in rem* proceedings, the most fundamental defect is a lack of notice to the owner of the property because of the legal fiction in these proceedings that the court has jurisdiction over the property and not the owner. See *Schroeder v. City of New York*, 371 U.S. 208, 211 (1962); *McGahan*, 237 Ill. 2d at 536-37; *Lowe*, 2011 IL App (2d) 100603, ¶ 19. I would hold that notice is a condition precedent and a jurisdictional prerequisite that must be given to the owner for a forfeiture judgment to be valid. Therefore, where no notice is given by the State to a known owner of property, the forfeiture judgment is void. Whether a judgment is void is a question of law, which this court will review *de novo*. *Medponics Illinois, LLC v. Department of Agriculture*, 2021 IL 125443, ¶ 29.

¶ 35                        B. Constitutional Notice Requirements

¶ 36            Jurisdiction is conferred on circuit courts by our state constitution. *Castleberry*,
        2015 IL 116916, ¶ 15. There are two Illinois constitutional provisions defining the
        scope of jurisdiction for circuit courts in forfeiture proceedings: (1) article VI,
        section 9, which provides that circuit courts have original jurisdiction over all
        justiciable matters (Ill. Const. 1970, art. VI, § 9); and (2) article I, section 2, which
        provides that no person shall be deprived of property without due process of law
        (Ill. Const. 1970, art. I, § 2). It is axiomatic that a civil forfeiture proceeding is a
        *sui generis* proceeding where a governmental entity, herein the Cook County
        State's Attorney's Office, commences an action and seizes, takes, or deprives a
        person of their property.

¶ 37            A forfeiture proceeding is a justiciable matter; therefore, I agree with the
        majority that the circuit court has subject-matter jurisdiction pursuant to article VI,
        section 9, of our constitution. However, I disagree with the majority's finding that
        the failure to provide Salaam with notice did not and could not divest the circuit
        court of jurisdiction and therefore render the forfeiture judgment void. Indeed, case
        law and article I, section 2, of our constitution require that notice be given before a
        valid judgment can be entered in a forfeiture proceeding. See *Schroeder*, 371 U.S.
        at 211; *McGahan*, 237 Ill. 2d at 536-37; Ill. Const. 1970, art. I, § 2. Accordingly, I
        would hold that in forfeiture proceedings notice is required before a judgment is
        entered and that the failure to provide Salaam with notice prevented the circuit court
        from acquiring jurisdiction and rendered the forfeiture judgment void.

¶ 38                        C. The Forfeiture Judgment Is Void

¶ 39            Salaam has a right to notice pursuant to the due process clauses of the United
        States and Illinois Constitutions. U.S. Const., amend. XIV; Ill. Const. 1970, art. I,
        § 2. Indeed, it is because of the due process clauses in our constitutions that a
        forfeiture judgment for seized property cannot be entered without notice and that
        section 4 of the Forfeiture Act requires that notice be given to an "[o]wner or
        [i]nterest [h]older." See 725 ILCS 150/4 (West 2014).

¶ 40            In this case, Salaam was the owner of the van in which the drugs and currency
        were seized, and his name and address were known to the State. Based on the facts

in this case, Salaam was an "owner or interest holder" in the currency and entitled to notice. Ill. Const. 1970, art. I, § 2; 725 ILCS 150/4 (West 2014). Even though Salaam was not physically present in the van at the time of the seizure of the currency, there is a presumption that his ownership and control of the van extends to the contents of the van, including the currency. See *People v. Four Thousand Eight Hundred Fifty Dollars ($4,850) United States Currency*, 2011 IL App (4th) 100528, ¶ 17. Further, it is not unreasonable to conclude that the owner of a van in which currency was seized and forfeited would also be the "owner or interest holder" of the currency. While the State served notice by publication on Tyler and "any other unknown owner," publication was not the type of notice mandated by our constitutions where the name and address of the owner of the van was readily ascertainable through a license plate search. Moreover, Salaam's ownership of the van was known to the State. See *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 320 (1950) (publication is insufficient to apprise "known persons whose whereabouts [were] also known of substantial property rights"). Therefore, Salaam, as an "owner or interest holder," was entitled to notice as constitutionally mandated under article I, section 2. See Ill. Const. 1970, art. I, § 2; see also U.S. Const., amend. XIV. Consequently, because Salaam did not receive notice that was reasonably calculated to apprise him of the pendency of the forfeiture action, the forfeiture judgment is void. See *Schroeder*, 371 U.S. at 211; *Mullane*, 339 U.S. at 312-14.

¶ 41                                   D. Coequal Constitutional Provisions

¶ 42        The majority highlights the fact that this court decided, in *Castleberry*, 2015 IL 116916, ¶ 15, that the failure to comply with a statutory requirement or prerequisite cannot deprive a circuit court of subject-matter jurisdiction, because jurisdiction is conferred entirely by our state constitution. But our state constitution also provides that no person shall be deprived of property without due process of law. Ill. Const. 1970, art. I, § 2. It is axiomatic that article I, section 2, as a constitutional provision, has the same force, effect, and standing as article VI, section 9. The deprivation of life, liberty, or property by adjudication must be "preceded by notice and opportunity for hearing appropriate to the nature of the case," and the notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their

objections." *Mullane*, 339 U.S. at 313-14. Therefore, because seizing the currency would be depriving Salaam of his property, he was entitled to notice before the circuit court entered a forfeiture judgment. See Ill. Const. 1970, art. I, § 2; see also *Schroeder*, 371 U.S. at 211.

¶ 43 It is an erroneous interpretation of the due process clauses in our constitutions to conclude that the circuit court can render a judgment against currency, which will directly impact the property interests of its known owner, without providing notice to that owner. Notice is more than a statutory requirement or prerequisite in this case; it is a constitutionally mandated condition precedent to avoid violation of a person's due process rights. *Schroeder*, 371 U.S. at 211; Ill. Const. 1970, art. I, § 2. Therefore, the State's failure to provide notice to Salaam prevented the circuit court from exercising *in rem* jurisdiction over the currency and renders the forfeiture judgment void.

¶ 44                                  II. CONCLUSION

¶ 45 In this case, I disagree with the majority's holding and would find that Salaam, as "owner or interest holder" of the currency, was entitled to notice of the forfeiture proceedings and that the State's failure to provide him with the notice mandated by our constitutions violated his due process rights, prevented the circuit court from exercising *in rem* jurisdiction, and consequently rendered the forfeiture judgment void. The majority ignores the fact that the right to notice is incorporated in the due process clauses of our constitutions, and that a person has a right to notice before a forfeiture judgment is entered when his or her property is seized. Therefore, I respectfully dissent.