NOTICE
Decision filed 06/26/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250295-U

NO. 5-25-0295

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE *ex rel.* THOMAS A. HAINE, State's Attorney of Madison County, | ) ) ) | Appeal from the Circuit Court of Madison County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 24-MX-732 |
| 2017 LEXUS RX 350, TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000) UNITED STATES CURRENCY, and FOUR HUNDRED DOLLARS ($400) UNITED STATES CURRENCY, | ) ) ) ) ) | |
| Defendants | ) ) | Honorable Neil T. Schroeder, |
| (Xiaolin Zheng and Kezhong Xie, Claimants-Appellants). | ) | Judge, presiding. |

_____

JUSTICE CLARKE delivered the judgment of the court.
Justices McHaney and Sholar concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The circuit court erred in dismissing the forfeiture action without entering a final order disposing of the seized property. On appeal, the State concedes that the circuit court retained *in rem* jurisdiction after dismissal and was required to direct the disposition of the property. The parties only dispute whether the circuit court was required to return the property to the claimants. Because the record does not establish that the claimants were entitled to immediate return of the property as a matter of law, we reverse the dismissal to the extent it failed to dispose of the seized property and remand for entry of a final disposition order consistent with Illinois forfeiture law and *in rem* jurisdictional principles.

¶ 2   The claimants, Xiaolin Zheng and Kezhong Xie, appeal the order of the circuit court of

Madison County granting the State's motion to dismiss the forfeiture action without directing the

1

disposition of the property. On appeal, the claimants argue that the circuit court erred by dismissing the forfeiture action without ordering the disposition of the property and failing to return the seized property to them. For the following reasons, we reverse and remand.

¶ 3                                      I. BACKGROUND

¶ 4     We limit our recitation to the facts necessary for the disposition of this appeal. On June 25, 2024, the Illinois State Police (ISP) conducted a traffic stop on Interstate 70 in Madison County involving claimants Xiaolin Zheng and Kezhong Xie. During the stop, officers located approximately $250,000 in U.S. currency concealed beneath the carpeted center console area of a 2017 Lexus RX 350, along with an additional $400 on Zheng's person. The Lexus and all seized currency were taken into evidence and held by the Metropolitan Enforcement Group of Southern Illinois (MEGSI).

¶ 5     On June 27, 2024, the Madison County State's Attorney filed felony money laundering charges against Zheng and Xie. In addition, on July 3, 2024, the State filed a verified complaint for forfeiture under Madison County case No. 24-MX-732 pursuant to section 29B-5 of the Criminal Code of 2012 (Code) (720 ILCS 5/29B-5 (West 2022)), seeking forfeiture of the Lexus, the $250,000 in U.S. currency, and the $400 in U.S. currency. The verified forfeiture complaint alleged that the seized property constituted proceeds of money laundering or was used to facilitate money laundering offenses. The circuit court, on the same date, entered a probable-cause finding under section 29B-9(e) (*id.* § 29B-9(e)).

¶ 6     On July 30, 2024, the claimants filed a claim/answer asserting lawful ownership of the property. Their filing asserted a possessory and ownership interest in the seized money and vehicle and alleged that the money was obtained from family and acquaintances for the purpose of opening a restaurant in the Midwest. Additionally, on that same date, the claimants filed a motion to excuse

verification of the claim/answer. On August 7, 2024, the claimants filed a verification to their claim/answer, and the matter was set for further proceedings.

¶ 7 During the preliminary stages of the forfeiture action, multiple pleadings were filed, including claimants' motions for substitution of judge. On October 2, 2024, the State filed a motion to strike the claimants' claim/answer asserting that they have failed to "provide sufficient facts or legal basis to substantiate their claim of ownership" in addition to challenging whether the claim satisfies the statutory pleading requirements. The circuit court set the motion to strike for a November 1, 2024, hearing and scheduling conference. On October 15, 2024, the claimants filed a written response. Before any ruling on the motion to strike, the claimants filed a motion to dismiss the forfeiture action and to return the property on October 25, 2024, and later amended the motion on October 30. On October 31, 2024, the State filed a motion to stay the forfeiture proceedings under section 29B-13(12) of the Code (*id.* § 29B-13(12)), asserting that the underlying criminal case should proceed first. The record indicates that both parties agreed to stay the forfeiture proceedings while related criminal matters proceeded.

¶ 8 Thereafter, on March 10, 2025—nine months after the seizure—Callaway County, Missouri, issued criminal arrest warrants charging both Zheng and Xie with felony "stealing by deceit" relating to the same $250,000. Missouri authorities advised ISP and Madison County prosecutors that they sought the seized currency for evidentiary use in the Missouri criminal case. We note that no separate claim or turnover order was filed in the forfeiture action by Missouri authorities, nor a motion requesting an "innocent owner hearing" under section 29B-14 by the alleged true owners of the currency in Missouri. See *id.* § 29B-14.

¶ 9 On March 20, 2025, the State dismissed the criminal felony money laundering charges. The following day, March 21, 2025, the State filed a motion to dismiss the forfeiture case, and the

matter proceeded to a hearing. The circuit court noted that on March 6, 2025, claimants' counsel had filed a motion for return of the property. The parties agreed that the State's motion to dismiss should be addressed first. The claimants' counsel objected to the proposed dismissal order because it did not direct the disposition of the property, arguing that the forfeiture statute required the court to direct the disposition of the seized property and citing federal forfeiture authority. Counsel emphasized that while the State had authority to dismiss its own action, the court retained an independent obligation to direct the disposition of the property.

¶ 10    The central issue at the hearing concerned whether, after dismissal, the circuit court was statutorily required to determine ownership or otherwise direct disposition of the seized property. The claimants argued that "there must be directions from you as to the *res*" and that a forfeiture court retains jurisdiction until it orders where the property must go.

¶ 11    The State argued that the money constituted evidence in Missouri and that, because it was no longer pursuing forfeiture, the circuit court had no further role. The State explained it was not pursuing forfeiture and intended that the currency "should go to Missouri where [the claimants] have warrants pending" and where it would be used "as evidence in that matter." The State also argued that the statutory return provisions apply only following adjudication on the merits, not voluntary dismissal.

¶ 12    The circuit court repeatedly expressed the view that, upon signing the dismissal order, "this Court's jurisdiction ends with what happens to the car and the money." The circuit court stated:

> "I don't think I have jurisdiction over the res once this case is dismissed. And it simply becomes something sitting in a vault at the Illinois State Police. And what happens to it at that point, not my concern. If it ends up in civil court because people want to file lawsuits, so be it."

¶ 13    The claimants' counsel strongly disputed the court's view that dismissal ended its authority over the property. Counsel emphasized that they had filed a verified claim asserting an interest in the seized property and that no other person or entity had appeared to assert a competing claim. Counsel argued that the forfeiture statute required the court to resolve the claims before it and that "one of the parties has said we don't want it anymore," leaving the claimants "the only ones left." Counsel maintained that, under the Code, once a verified claim is filed, "there's a process that you have to go through," and that the court was therefore required to determine the proper disposition of the property.

¶ 14    The record reflects that the circuit court rejected claimants' position. The judge characterized the result urged by claimants—automatic return of the property upon the State's voluntary dismissal—as an "absurd result." The court reasoned that the forfeiture statute did not require the State to proceed to a merits hearing simply because a claim had been filed. The court further expressed that dismissal ended the forfeiture court's role, stating that "once this forfeiture action is dismissed, this Court's jurisdiction ends."

¶ 15    The circuit court also rejected claimants' argument that section 29B-13(10) required return of the property because the State "failed to meet its burden." The court explained that the statutory burden-shifting scheme applies only after a hearing or trial at which the State presents its case-in-chief. Because "there's been no hearing, and there's been no trial," the court concluded that the provisions in section 29B-13(9) and (10) concerning the State's burden did not apply. The court emphasized that it was making no determination regarding ownership or whether the State had met—or failed to meet—any substantive burden, because the forfeiture action was being dismissed at the pleadings stage.

5

¶ 16    Ultimately, the circuit court granted the State's motion to dismiss without directing any disposition of the property. The written dismissal order did not address the Lexus, the $250,000, or the $400, and simply closed the case. As a result, the seized property remained in ISP/MEGSI custody with no judicial directive governing its lawful disposition. The claimants filed a timely notice of appeal.

¶ 17                                   II. ANALYSIS

¶ 18    On appeal, two issues are presented: (1) whether the circuit court erred by dismissing the forfeiture action without entering a final order directing the disposition of the seized property and (2) whether the circuit court erred in refusing to return the property to the claimants upon dismissal of the forfeiture action. Notably, the State expressly concedes that the circuit court retained *in rem* jurisdiction over the property and should have directed its disposition. Because both issues involve questions of statutory interpretation and *in rem* jurisdiction, our review is *de novo*. See *Marque Medicos Fullerton, LLC v. Zurich American Insurance Co.*, 2017 IL App (1st) 160756, ¶ 31 (questions relating to circuit court's jurisdiction and interpretation of a statute present questions of law subject to *de novo* review).

¶ 19    As an initial matter, the State, during oral argument, suggested for the first time that the voluntary dismissal order may not have been final and appealable. Although the issue was not raised in the briefs, this court has an independent duty to consider issues of jurisdiction, regardless of whether either party has raised them. *People v. Smith*, 228 Ill. 2d 95, 104 (2008). In *Kahle v. John Deere Co.*, 104 Ill. 2d 302 (1984), the Illinois Supreme Court held that a defendant may appeal from a plaintiff's voluntary dismissal order because, although dismissed without prejudice, such an order conclusively terminates the pending action and may prejudice the opposing party, leaving no mechanism for later review in the trial court. *Id.* at 305-07. The same reasoning applies

6

here: the order dismissing the State's forfeiture complaint ended the action in its entirety, resolved all claims then before the court, and rendered all pending motions—including the State's motion to strike and the claimants' motion to dismiss and return property—moot, leaving nothing remaining that would alter finality. Whether the dismissal should have been accompanied by a judicial disposition of the property presents a pure legal question that can be reviewed only on direct appeal. Accordingly, the March 21, 2025, dismissal order is final and appealable under *Kahle*, and we have jurisdiction to consider this appeal.

¶ 20    Article 29B of the Code authorizes forfeiture of property connected to money laundering offenses. 720 ILCS 5/29B-5 (West 2022). Property is subject to forfeiture if it constitutes or is derived from proceeds of money laundering or if it is used or intended to be used to commit or facilitate such conduct. *Id.* § 29B-5(1)-(2).

¶ 21    Under section 29B-13, a judicial *in rem* forfeiture proceeding is initiated by filing a verified complaint, which must be served on all known or reasonably identifiable persons claiming an interest in the property. *Id.* § 29B-13(1), (3). Once the court enters a probable-cause finding under section 29B-9(e), the statute directs that the circuit court "shall order the property subject to the applicable forfeiture Act held until the conclusion of any forfeiture proceeding." *Id.* § 29B-9(e).

¶ 22                          A. Failure to Enter a Final Disposition Order

¶ 23    The claimants first argue that the circuit court erred by dismissing the forfeiture action without issuing an order directing the disposition of the seized Lexus and currency. They assert that once the State invoked the court's *in rem* jurisdiction by filing a verified complaint and the court entered a probable-cause order under section 29B-9(e), the court acquired jurisdiction over the property and could not lose that jurisdiction until it entered an order specifying the property's lawful disposition. The claimants rely on *People v. Keys*, 324 Ill. App. 3d 630, 635 (2001), and a

7

line of federal *in rem* decisions holding that a court's *in rem* jurisdiction persists until the court affirmatively disposes of the property.

¶ 24    The State, on appeal, expressly concedes that the circuit court retained *in rem* jurisdiction over the property even after the State voluntarily dismissed its complaint. The State acknowledges, in its brief, that "the circuit court never lost *in rem* jurisdiction over the property and that the court's jurisdiction remains, regardless of the property's present location." The State further concedes that dismissal alone did not extinguish the court's jurisdiction and that the court was required to issue a disposition order. The State only disputes whether the circuit court was required to return the property to the claimants.

¶ 25    When the State filed its verified forfeiture complaint and the circuit court entered a probable-cause order under section 29B-9(e) of the Code, the circuit court acquired *in rem* jurisdiction over the seized Lexus and currency. *People ex rel. Alvarez v. $59,914 United States Currency*, 2022 IL 126927, ¶ 20 (circuit court had *in rem* jurisdiction over currency based upon the State's seizure and filing of a forfeiture action). Section 29B-9(e) provides that, upon a finding of probable cause, the circuit court shall order the property held until the conclusion of the forfeiture proceeding. 720 ILCS 5/29B-9(e) (West 2022). Although article 29B does not define "conclusion," the structure of article 29B reflects that proceedings conclude only when the circuit court enters a judicial determination directing the disposition of the property. See *id.* §§ 29B-13(10), 29B-25(a). Nothing in article 29B authorizes voluntary dismissal alone to resolve the status of property already placed within the circuit court's *in rem* jurisdiction.

¶ 26    Illinois authority likewise recognizes that once a court acquires *in rem* jurisdiction over property, that jurisdiction continues until the court affirmatively relinquishes control over or disposes of the property. In *People v. Keys*, 324 Ill. App. 3d 630 (2001), the appellate court

8

explained that courts are "rightfully jealous of their jurisdiction," and once jurisdiction attaches, it is not surrendered "until [the court] ha[s] expressly done so." *Id.* at 635. *Keys* further held that unilateral acts by law enforcement or the state's attorney cannot divest the court of jurisdiction over seized property. *Id.* at 635-36 ("The State's Attorney does not have the power to oust the circuit court of jurisdiction once that jurisdiction has been assumed."). Although *Keys* addressed competing claims to seized assets, its reasoning remains applicable: when property is seized pursuant to judicial process, the court's control persists until it enters an order directing lawful disposition. *Id.* at 636-37.

¶ 27    The Illinois Supreme Court reaffirmed these principles in *People ex rel. Alvarez v. $59,914 United States Currency*, 2022 IL 126927. There, the court held that *in rem* jurisdiction attaches when the State seizes property and initiates forfeiture proceedings, and that once jurisdiction attaches, subsequent defects in notice or procedure do not divest the court of authority over the *res*. *Id.* ¶¶ 18-23. The court further explained that such defects render any resulting order voidable, rather than void, precisely because jurisdiction over the property already attached. *Id.* ¶¶ 20-23. Thus, *Alvarez* confirms that once a court acquires *in rem* jurisdiction over the *res*, that jurisdiction is not defeated by subsequent procedural irregularities. Likewise, *Keys* recognized that property comes within the circuit court's power upon seizure pursuant to judicial process and that, once jurisdiction has been assumed, it is not surrendered until the court expressly relinquishes it. *Keys*, 324 Ill. App. 3d at 636-37. Accordingly, the question is not whether the State's voluntary dismissal terminated the forfeiture claim; it plainly did. Rather, the question is whether dismissal of the forfeiture pleadings, standing alone, also terminated the circuit court's *in rem* authority over property that remained in its custody—still physically secured in an ISP vault—because no order directing its disposition had been entered. Under *Alvarez* and *Keys*, it did not. Absent a judicial

9

disposition, transfer order, or other affirmative relinquishment of control over the property, dismissal of the complaint did not, itself, extinguish the circuit court's *in rem* jurisdiction.

¶ 28    Federal authority is consistent with this framework. The United States Supreme Court has long held that "the court first assuming jurisdiction over the property may maintain and exercise that jurisdiction to the exclusion of the other." *Penn General Casualty Co. v. Commonwealth of Pennsylvania ex rel. Schnader*, 294 U.S. 189, 195 (1935). Likewise, *Republic National Bank of Miami v. United States*, 506 U.S. 80 (1992), reaffirmed that once a court acquires *in rem* jurisdiction, that jurisdiction is not defeated by subsequent transfer of the *res* or by loss of physical possession. *Id.* at 87-88. Additionally, the Seventh Circuit has similarly recognized that when state law vests custody of seized property in the circuit court, neither law enforcement nor a prosecuting authority may unilaterally interfere with or circumvent that court's *in rem* jurisdiction; disposition must occur through the court exercising that jurisdiction. *United States v. One 1979 Chevrolet C–20 Van*, 924 F.2d 120, 122-23 (7th Cir. 1991). Together, these authorities support the same principle discussed above: once *in rem* jurisdiction attaches, it remains unless and until the court affirmatively relinquishes it.

¶ 29    As noted above, the State concedes on appeal that the circuit court retained *in rem* jurisdiction after dismissal, and that a disposition order was required. Although not binding on this court, the concession is consistent with article 29B and controlling principles of *in rem* jurisdiction; thus, we accept the State's concession. Our acceptance of the State's position does not rest upon the concession alone; rather, the continuing nature of *in rem* jurisdiction under Illinois law provides an independent basis for this conclusion.

¶ 30    Applying these principles, the circuit court erred by concluding that dismissal of the forfeiture complaint terminated its authority over the property. Upon the filing of a forfeiture action

and entry of the section 29B-9(e) probable-cause order, the court obtained continuing control over the Lexus and currency until it issued an order disposing of the *res*. The dismissal order entered here contained no such directive. Instead, the court expressly stated that the property was "not [its] concern" after dismissal and would remain "in a vault" with the Illinois State Police. That reasoning contravenes article 29B, *Keys*, and *Alvarez*, and the dismissal order must be reversed.

¶ 31    We note an additional basis supporting our conclusion that the circuit court retained *in rem* jurisdiction and requiring reversal of the circuit court's dismissal order. Although not raised by either party, the circuit court erred when it failed to address the State's motion to strike the claimants' verified claim prior to granting dismissal of the forfeiture action. Our conclusion is reinforced by the statutory structure of article 29B, as recently examined in *People ex rel. Raoul v. $699,982 in United States Currency*, 2026 IL App (3d) 230139. In *Raoul*, the appellate court reversed the circuit court's dismissal of a forfeiture action, holding that even though the parties had agreed to address a motion to dismiss before the State's challenge to the verified claim under section 29B-13(5) and (6), the court erred by granting dismissal without first resolving that challenge. *Id.* ¶¶ 32-37, 42. As *Raoul* explains, section 29B-13(5) provides that " '[o]nly an owner of or interest holder in the property' " may answer the State's complaint and participate as a claimant in an *in rem* forfeiture proceeding. *Id.* ¶ 33 (quoting 720 ILCS 5/29B-13(5) (West 2022)). Further it provides that, upon the State's motion, " 'the court shall first hold a hearing, in which a claimant shall establish by a preponderance of the evidence, that he or she has a lawful, legitimate ownership interest in the property and that it was obtained through a lawful source.' " *Id.* (quoting 720 ILCS 5/29B-13(5) (West 2022)). Thus, once the State triggers section 29B-13(5), the circuit court must decide that threshold ownership and claim-sufficiency issue before entering dispositive relief and cannot circumvent the statutory sequence. *Id.* ¶¶ 32-33, 37, 42. Moreover, *Raoul* makes

11

clear that although parties may agree to sequence motions in a particular order, such agreements do not relieve the court of its independent obligation to decide the section 29B-13(5) issue first. *Id.* ¶¶ 34-37. Although *Raoul* did not arise from a voluntary dismissal, its reasoning applies with equal force because the filing of a verified claim coupled with the State's motion challenging the verified claim under section 29B-13(5) imposes a statutory obligation that is not extinguished merely because the State later elects to abandon the forfeiture complaint. Once the State invokes section 29B-13(5), the circuit court must determine whether any lawful claimants exist—both to assess who may participate in the proceedings and argue motions before the court, and to identify the proper disposition of the property should dismissal be granted.

¶ 32      The same structural defect occurred here. At the March 21, 2025, hearing, the circuit court acknowledged there were outstanding motions, but the parties agreed to proceed on the motion to dismiss first. During arguments related to the motion to dismiss, the circuit court noted that the State had filed a motion to strike the claimants' verified claim, and the circuit court expressly stated on the record that it had set that motion "for a hearing" but that "we never got past [subsection] 5" because the parties agreed to stay the forfeiture case pending the related criminal charges. The circuit court further acknowledged that it had "never determined that [the claimants] made a valid claim" and that section 29B-13(9) and (10) did not apply because "there's been no hearing, and there's been no trial." As in *Raoul*, these statements by the circuit court confirm that the statutory prerequisites governing who may appear as a claimant remained unresolved at the time the court granted dismissal. See *id.* ¶¶ 32-33.

¶ 33      Nothing in *Raoul* suggests that this statutory obligation depends on which party seeks dismissal; the error lies in granting dispositive relief while the unresolved section 29B-13(5) challenge remained pending. Under *Raoul*, the circuit court here was required to first address the

12

State's motion to strike the verified claim before proceeding to any dispositive relief. *Id.* ¶¶ 32-33, 37, 42. Because the circuit court "never got past [subsection] 5," the statutory sequence required for concluding a forfeiture proceeding had not been completed. Accordingly, the forfeiture action had not reached a "conclusion" within the meaning of section 29B-9(e) at the time of dismissal. Thus, the circuit court retained *in rem* jurisdiction over the *res* and erred in dismissing the forfeiture action without entering a lawful disposition order.

¶ 34    Because the circuit court dismissed the forfeiture action without resolving the status of the seized property as required under article 29B, reversal is necessary. On remand, the circuit court must exercise its continuing *in rem* jurisdiction, adjudicate any outstanding threshold matters under section 29B-13, and enter a lawful disposition order consistent with article 29B's statutory framework.

¶ 35                    B. Whether Claimants Were Entitled to Return

¶ 36    The claimants next argue that the circuit court was required to return the seized property immediately upon voluntary dismissal of the forfeiture complaint. They rely primarily on section 29B-13(10) of the Code, which provides that if the State "does not meet its burden to show that the property is subject to forfeiture, the court shall order the interest in the property returned or conveyed to the claimant ***." 720 ILCS 5/29B-13(10) (West 2022). They argue that dismissal should be treated as a failure of proof and that, because no competing claim was filed, return was mandatory.

¶ 37    We do not read article 29B so broadly. Section 29B-13 establishes a structured, sequential adjudicative framework. First, a claimant must file a verified claim satisfying statutory requirements. *Id.* § 29B-13(5), (6). The court must then resolve any challenges to the sufficiency of that claim. Only after a legally sufficient and adjudicated claim is recognized does the statute

contemplate an evidentiary hearing at which the State must "meet its burden" by proving that the property is subject to forfeiture. *Id.* § 29B-13(9), (10). Section 29B-13(10) applies only when the State fails to meet its burden at such a hearing. Nothing in article 29B treats voluntary dismissal before adjudication as equivalent to an adverse finding on the merits.

¶ 38 Here, the State filed a motion to strike the verified claim challenging its factual and legal sufficiency under section 29B-13, and the circuit court never ruled on that motion. As a result, the court never determined whether the claimants' filing met the statutory requirements necessary to trigger the burden-shifting and mandatory-return provisions of section 29B-13(10). As discussed above, section 29B-13(5) through (10) operates in a required sequence, and the court cannot reach the merits-related provisions of section 29B-13(9) and (10) until any threshold challenge to the verified claim has been resolved. See *Raoul*, 2026 IL App (3d) 230139, ¶¶ 32-33, 37. Because the State invoked section 29B-13(5) here and the court "never got past [subsection] 5," the proceeding never advanced to the stage at which the State could be said to have failed to meet its burden; thus, section 29B-13(10) was never triggered.

¶ 39 Further, article 29B expressly recognizes that property may continue to be lawfully held for evidentiary purposes independent of an active forfeiture proceeding. Section 29B-25(d) authorizes retention of property "needed for evidentiary purposes," and section 29B-19 tolls statutory deadlines while property is held as evidence. 720 ILCS 5/29B-25(d), 29B-19 (West 2022) ("If property is seized for evidence and for forfeiture, the time periods for instituting judicial and non-judicial forfeiture proceedings shall not begin until the property is no longer necessary for evidence."). Nothing in article 29B limits evidentiary retention to Illinois prosecutions. The record indicates that Missouri authorities sought the currency for use in criminal proceedings arising from the same events. Because the circuit court erroneously believed it lost jurisdiction upon dismissal,

14

it never considered whether evidentiary retention or transfer was authorized. We express no view as to whether Missouri's criminal proceedings may independently justify continued evidentiary retention or transfer under principles of comity or custodial coordination; such questions remain for the circuit court to address on remand in the first instance.

¶ 40    Illinois precedent confirms that section 29B-13(10) cannot be read to mandate automatic return upon voluntary dismissal. In *Keys*, the appellate court rejected interpretations that would allow disposition of seized property outside the judicial process mandated by statute, underscoring that custody remains with the court until it orders otherwise. *Keys*, 324 Ill. App. 3d at 635-37. The Illinois Supreme Court has likewise instructed that statutes must be construed as a whole and not in a manner that collapses distinct procedural safeguards. *People v. Gutman*, 2011 IL 110338, ¶ 12. Reading section 29B-13(10) to mandate immediate return upon voluntary dismissal would nullify the statute's sequential structure and improperly treat dismissal as a merits adjudication.

¶ 41    Federal forfeiture authority is consistent with this interpretation. The Sixth Circuit has explained that even when a forfeiture action is voluntarily dismissed, the district court "retains the authority to make an appropriate disposition of the property," because a federal court may continue to resolve collateral issues after dismissal. *United States v. $515,060.42 in United States Currency*, 152 F.3d 491, 501 n.9 (6th Cir. 1998). Thus, dismissal does not itself terminate judicial control over the *res* or require the immediate return of the *res* to the claimant.

¶ 42    Accordingly, because the sufficiency of the verified claim was never adjudicated, no evidentiary hearing occurred, and no judicial determination regarding forfeiture was made, section 29B-13(10) was not triggered. Additionally, the mere act of voluntary dismissal does not constitute the "conclusion" of a forfeiture proceedings within the meaning of section 29B-9(e), as the statutory framework conditions that conclusion upon a judicial determination resolving the

15

disposition of the *res*. Thus, although the circuit court erred in dismissing the forfeiture action without entering a disposition order, the claimants were not automatically entitled to immediate return of the property as a matter of law. The proper remedy is reversal of the dismissal order and remand for the circuit court to exercise its continuing *in rem* jurisdiction and conduct the necessary proceedings to determine the lawful disposition of the seized property under article 29B, as set for below.

¶ 43    For these reasons, we reverse the dismissal order to the extent it failed to dispose of the seized property and remand for further proceedings. On remand, the circuit court shall exercise its continuing *in rem* jurisdiction and, if necessary, resolve the threshold matters left pending at dismissal—including the sufficiency of any verified claim under section 29B-13—and conduct the proceedings required under article 29B to determine the lawful disposition of the Lexus and currency. We also acknowledge that circumstances involving the *res* may have evolved since dismissal, including the fact—known to the circuit court at the time—that Missouri authorities sought the seized currency for use in a pending criminal prosecution. We express no view on the legal effect on any such developments. On remand, the circuit court may consider these and any other post-dismissal developments in the first instance, as appropriate under Illinois law and principles of comity, in determining the proper disposition of the *res*.

¶ 44                                    III. CONCLUSION

¶ 45    For the reasons stated, we reverse and remand the judgment of the Madison County circuit court.

¶ 46    Reversed and remanded with directions.